# Mrs. Patricia Biggers et al v. Continental Bus System, Incorporated

No. A-5280. Decided May 22, 1957.
Rehearing overruled July 10, 1957.
(303 S.W. 2d Series 359.)

352

*Pepper & Markward, Forrest Markward* and *Robert C. Pepper,* all of Fort Worth, and *James P. Hart,* of Austin, for Mrs. Biggers and her minor children, *Butler, Binion, Rice & Cook* and *Wm. P. Blanton, Jr.,* of Houston, for Commercial Standard Ins. Co., petitioners.

*Andrews, Kurth, Campbell & Bradley, Hall E. Timanus* and *Robert L. Bradley,* all of Houston, for *Betty Joe Epps Gross* and her husband, *Strasburger, Price, Kelton, Miller & Martin,* of Dallas, *Chilton Bryan,* of Houston, *Looney, Clark & Moorhead,* of Austin, for Continental Bus System, *Hamblen & Bobbitt* and *Karl E. Kraft,* of Houston, for A. H. Lightfoot, et al, respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

On December 12, 1956 we entered judgment in this case affirming the judgment of the Court of Civil Appeals and filed

an opinion now reported in 298 S.W. 2d 79. On February 27, 1957 we overruled a motion for rehearing filed by petitioners, but thereafter granted a second motion for rehearing. We now set aside our former judgment and reverse the judgment of the Court of Civil Appeals and remand the cause to that court for further proceedings as per the opinion which follows.

This is a suit by Mrs. Patricia Biggers and her children for damages resulting from a collision between a Ford automobile driven by Enoch A. Biggers, Jr., husband and father of petitioners, and a passenger bus belonging to Continental Bus System driven by Jack P. Lanham, an employee of the Bus Company. Continental Bus System and Mrs. Betty Joe Epps Gross and husband, William Gross, Jr., were defendants in the suit. The collision took place on Highway 75 about eight miles north of Huntsville, Texas, about 8:52 a.m. on December 20, 1951. Enoch A. Biggers, Jr. was killed instantly in the collision.

The bus belonging to Continental was proceeding generally in a northerly direction from Houston to Madisonville, Texas, on Highway 75, and was on its own proper right side of the highway, well to the right of the center stripe of such highway. The collision between the vehicles took place 138 feet north of a bridge over Nelson Creek. The highway was 24 feet wide at the point of the collision and the bridge was 28 feet wide. As the bus was being driven north along the highway, three automobiles were approaching from the north traveling south on the highway. The first was a Hudson automobile. Approximately 100 or more feet behind the Hudson was the Ford driven by Enoch A. Biggers, Jr., and a short distance behind the Ford was a Chevrolet automobile driven by Miss Betty Jo Epps accompanied by Mrs. Ernest De Jernett. By the time of the trial Miss Epps had married William Gross, Jr. It had been raining and the paved portion of the highway was wet. As the Hudson approached the bridge across the highway the driver of the Hudson slowed down to observe the creek to ascertain if it was too muddy for fishing. The shoulders on both sides of the highway were wet and muddy. There is evidence that the Hudson was being driven at 40 to 45 miles per hour and was slowed to 10 to 15 miles per hour. The Ford was being driven faster than the Hudson, so when the Hudson slowed down the driver of the Ford put on his brakes to avoid a collision with the Hudson. Mrs. Gross saw the brake light of the Ford go on, and she put on her brakes to avoid colliding with the Ford. Her brakes locked the wheels on the Chevrolet and it slid into the Ford, striking it a little to the right of the center of the rear bumper.

This resulted in the Ford being propelled somewhat diagonally eastward into the bus' right-hand side of the highway. The collision resulted between the bus and the Ford and all three occupants of the Ford were killed instantly.

Upon a trial before a jury the jury answered most of 79 special issues favorably to the plaintiffs. The jury found the driver of the bus guilty of negligence in failing to keep a proper lookout, in failing to apply his brakes, in driving at an excessive rate of speed and in driving at a speed in excess of 55 miles per hour, and found each act of negligence to be a proximate cause of the collision. The driver was found not to have been acting in an emergency created by conditions other than his own negligence. The jury found Mrs. Gross guilty of certain negligent acts each of which was also found to be a proximate cause of the collision. Biggers was absolved of all charges of negligence. He was found to have acted in an emergency after the Ford was hit by the Chevrolet. The driver of the Hudson was also absolved of all charges of negligence. The collision was found not to have been the result of an unavoidable accident. Plaintiffs pleaded "discovered peril" as a ground of recovery and the trial court by appropriate issues submitted this ground of liability. The jury, in answering these issues, found that the discovery by the bus driver of the perilous position of the deceased did not occur at such time that the driver could have avoided the collision. Any liability on the part of Continental by virtue of the doctrine of discovered peril is therefore not in the case as presented to us. All parties are agreed that no recovery can be had under that doctrine.

Judgment was entered by the trial court as follows: Plaintiffs were awarded judgment against Continental and Mrs. Gross and her husband, jointly and severally, for the amount of their damages as found by the jury in the sum of $101,080.00; Continental and Mrs. Gross were each denied a recovery over against the other by way of indemnity; Commercial Standard Insurance Company, an intervenor, was subrogated to so much of plaintiffs' judgment as was necessary to reimbure it for the sum paid to the plaintiffs under the Workmen's Compensation Law, and Continental and its driver were denied any recovery of damages for their injuries claimed in a cross-action against Mrs. Gross and husband and in a third party action against Texas Motors, a partnership, the employer of Biggers. Continental and Mrs. Gross and husband appealed, but in the Court of Civil Appeals Continental did not attack the judgment in so far

as it was denied a recovery against Mrs. Gross and husband or against Texas Motors.

Upon appeal the Court of Civil Appeals reversed the judgment of the trial court in part and rendered judgment that the plaintiffs take nothing against Continental upon the ground that, as a matter of law, none of the negligent acts of the bus driver was a proximate cause of the collision. The judgment of the trial court was otherwise affirmed. 277 S.W. 2d 228. A more detailed statement of facts will be found in the opinion of the Court of Civil Appeals.

■ The judgment of the Court of Civil Appeals in favor of Continental must be reversed if there is in the record before us evidence of probative value which, with the reasonable inferences therefrom, will support any one of the findings of proximate cause. Hall v. Medical Bldg. of Houston, 151 Texas 425, 251 S.W. 2d 497, 498. Moreover, we must approach a determination of the question in the light of our former admonition regarding questions of "no evidence" that "Appellate courts are without authority to set aside jury verdicts, particularly on questions of proximate cause in damage suits, upon conflicting facts—the undisputed facts must be ample and clear, and the circumstances most exceptional to justify such action." Liberty Film Lines v. Porter, 136 Texas 49, 146 S.W. 2d 982, 983.

■ If we could give controlling effect to evidence that the Ford entered the wrong traffic lane when the bus was only 15 or 20 feet distant, that the Ford was observed to "jump" out in front of the bus, or that the Ford entered the bus' lane of traffic less than two seconds before the collision; or if we were at liberty to use that evidence as our view of the probable facts in reconstructing the secene of the collision and the circumstances surrounding it; or even if we were permitted to consider that and similar evidence in deciding whether there is evidence of probative value to support the jury findings of proximate cause, we might find justification for setting aside those findings. But we may do none of these things. The boundaries of our duty are well established by decisions of this Court. We may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, *and we must disregard all evidence which would lead to a contrary result*. Cartwright v. Canode, 106 Texas 502, 171 S.W. 696, 698; Ford v. Panhandle & S. F. Ry Co., 151 Texas 538, 252 S.W. 2d 561, 562.

If there is evidence to support the jury's finding of proxi-

mate cause in connection with any of the negligent acts, the findings in connection with the other negligent acts need not be considered. We have concluded that there is evidence of probative force supporting the findings that the excessive speed at which the bus was traveling was a proximate cause of the collision. Accordingly, we will not determine whether there is evidence of probative force supporting the findings that the failure of the driver of the bus to keep a proper lookout and to apply his brakes were each also a proximate cause of the collision.

■ The two necessary elements of proximate cause are foreseeability and causation. Hopson v. Gulf Oil Corp., 150 Texas 1, 237 S.W. 2d 352, 355. Continental contends that neither element is present in this case.

Continental does not rest its contention that the element of foreseeability is absent entirely on the narrow ground that it was not required to foresee the exact manner in and by which the Ford entered the wrong traffic lane; its contention encompasses the broader view that one operating an automobile on a highway is not required, under any circumstances, to foresee or anticipate that an automobile traveling in the opposite direction may enter the wrong traffic lane. It concludes, for that reason, that the driver of an automobile cannot reasonably foresee that his own excessive speed may lead to a collision with another automobile in the wrong traffic lane. There are cases from other jurisdictions which would support a conclusion either way on that question. See cases collected in the annotations in 77 A.L.R. 598, 601, and 47 A.L.R. 2d 6, 95. The Texas cases dealing with the question support a conclusion contrary to that for which Continental contends. Justiss v. Naquin, Texas Civ. App., 137 S.W. 2d 72, writ dismissed, judgment correct; Blocker v. Brown Express, Inc., Texas Civ. App., 144 S.W. 2d 451, writ refused; Womack v. Hazelwood, Texas Civ. App., 271 S.W. 2d 699, writ refused, n.r.e. It will be noted that this court refused a writ of error in Blocker v. Brown Express, Inc., thus giving full approval to the opinion in that case and making the opinion as authoritative as one of its own opinions. Rule 483, Texas Rules of Civil Procedure; City of Houston v. Adams, 154 Texas 448, 279 S.W. 2d 308, 314; Heinatz v. Allen, 147 Texas 512, 217 S.W. 2d 994, 1000. This Court recognized in Southland-Greyhound Lines v. Richardson, 126 Texas 118, 86 S.W. 2d 731, that excessive speed in meeting and passing another automobile could be a proximate cause of a collision with such automobile even if it were in the wrong traffic lane. The holding in Davis v. Younger Bros., Texas Civ. App., 260 S.W. 2d 637,

writ refused, n.r.e., must be related to the peculiar and unusual facts in that case which need not be detailed here. We do not understand it to be in conflict with the cases we have cited.

It would be wholly out of keeping with reality to hold that an operator of an automobile traveling on a modern, heavily-traveled public highway cannot and should not, under any circumstances, reasonably foresee that an automobile approaching from the opposite direction may, for some reason, enter the wrong traffic lane and thus be endangered by excessive speed which makes stopping, deceleration or turning aside to avoid a collision impossible or more difficult. In San Antonio & A. P. Ry. Co. v. Behne, Texas Com. App., 231 S.W. 354, 356, the court, in referring to cases dealing with the element of anticipation and foreseeability in proximate cause, said: "From them, however, it will be seen that our Supreme Court has uniformly applied what might be termed a practical, common sense test, the test of common experience. The expression 'natural and probable result' has been used and interpreted to mean what should reasonably be anticipated in the light of common experience applied to the surrounding circumstances." Common experience teaches that thousands of automobiles enter wrong highway traffic lanes every day, often under circumstances which absolve the driver of negligent conduct. It is a matter of common knowledge that a fair proportion of collisions on highways are "head-on" collisions, resulting from one of the automobiles being in the wrong lane of traffic. We must and do reject Continental's contention that excessive speed can never a proximate cause of a collision, occurring in the operator's own lane of traffic, with an automobile traveling in the opposite direction.

■ Continental's narrower contention is that its driver could not reasonably foresee the unusual circumstance that the Chevrolet would strike the rear of the Ford and propel it into the wrong traffic lane. In support of this contention Continental cites Wiley v. Mercer, Texas Civ. App., 282 S.W. 2d 87; East Texas Motor Freight Lines v. Loftis, 148 Texas 242, 223 S.W. 2d 613; Minugh v. Royal Crown Bottling Co., Texas Civ. App., 267 S.W. 2d 861, writ refused, and Volkmer v. Curlee, Texas Civ. App., 261 S.W. 2d 870, writ refused.

The facts in Wiley v. Mercer are substantially identical with the facts in this case. That case was a venue case in which the jurisdiction of the Court of Civil Appeals was final and it could not and did not reach this court for review. The court there held, as a matter of law, that excessive speed of the defendant's

truck could not have been a proximate cause of a collision because the defendant's truck driver "was not chargeable with foreseeing that a third party such as Herman Moen would negligently strike the car of the plaintiffs from the rear and cause it to, without warning, be driven upon the side of the highway immediately in front of the truck." We disapprove that holding. In effect it asserts that one's negligence cannot be a proximate cause of an injury unless the precise manner or means of the injury resulting from the negligence can be foreseen. That view of proximate cause has been rejected by this court in a number of cases, notably in Sullivan v. Flores, 134 Texas 55, 132 S.W. 2d 110 and Carey v. Pure Distributing Corp., 133 Texas 31, 124 S.W. 2d 847.

■ The true rule is correctly stated in Sullivan v. Flores where it is said that all that is necessary to establish that an actor's negligent act is a proximate cause of an injury is proof that "As a person of ordinary intelligence and prudence, he should have anticipated the danger to others created by his negligent act, and the rule does not require that he anticipate just how injuries will grow out of that dangerous situation." So, in this case, it is sufficient that Continental's driver, as a person of ordinary intelligence, should reasonably have anticipated the danger to others created by his excessive speed if any one of the approaching automobile should enter his traffic lane for the purpose of passing a preceding automobile, or by reason of skidding on the wet pavement, or for any other non-negligent reason. It is not necessary as a predicate to Continental's liability that the bus driver should have anticipated or foreseen the exact reason for the entry of one of such automobiles into his lane of traffic. We do not regard the Loftis, Minugh or Volkmer cases as being factually analogous with the instant case or the holdings on proximate cause in such cases as being in conflict with the holdings on that issue in the Sullivan and Carey cases.

■ We must next determine whether the record shows, as a matter of law, that the excessive speed of the bus did not actually contribute to cause the collision. If the record shows, conclusively, that the collision would have occurred in any event and regardless of the speed of the bus, the jury finding of proximate cause cannot stand. A decision of this question requires a more detailed statement of the evidence which is most favorable to petitioners. In making the statement we will honor the rule that it is in the province of the jury to resolve conflicts and inconsistencies in the testimony of a witness or between witnesses.

Texas Law of Evidence by McCormick and Ray, page 3, Sec. 3; Ford v. Panhandle & Santa Fe Ry. Co., 151 Texas 538, 252 S.W. 2d 561, 563.

The operator of the Hudson automobile testified that as he was approaching the bridge he "slowed down to about 10 or 15 miles an hour." The Ford was behind the Hudson and the driver by applying the brakes diminished the speed of the Ford. In describing this operation Continental's driver testified that he observed that the driver of the Ford hit his brakes and slowed down to a very slow speed, about the same as the Hudson.[1] Pressed for an estimate as to the speed at which the Ford was traveling after it entered the bus' lane of traffic, the driver of the bus testified that he didn't know, that "it might have been 10 or 15 miles an hour, or 20 or 25 miles per hour, or 30 miles per hour." He had previously estimated the speed of the Hudson, after it had been slowed down, at 15 or 20 miles per hour.

The only testimony touching on the distance traveled by the Ford after it entered the bus' traffic lane also came from the driver of the bus. He testified that after the Ford turned out of its lane of traffic it traveled 40 or 50 feet south and 12 or 15 feet from west to east.

The evidence shows that from a point about seven-tenths of a mile south of the bridge the highway ran down a long grade toward the bridge and that while traveling down the grade toward the bridge the bus passed a gasoline tank truck driven by Charlie Mitchell. Mitchell testified that he was half way down the grade traveling at a speed of 45 to 50 miles per hour and that the bus passed him and "spread the distance" between them before the collision. He estimated the speed of the bus at from 60 to 65 miles per hour.

Considering the evidence here detailed in its most favorable aspects in support of the verdict, the jury could reasonably have concluded that as the Ford entered and proceeded in the wrong traffic lane it was traveling at a speed of 10 miles per hour or 14.65 feet per second; that after entering the traffic

[1] "Q. What did you observe the Ford do from the time the Hudson suddenly slowed down until the time of the impact, what did you see?

"A. Well, he slowed down and just hit the brakes and slowed down to a very slow speed * * *.

"Q. Did he slow down to the same speed as the Hudson was going after it had suddenly slowed down?

"A. It appeared to be about the same speed."

lane it covered a distance of at least 52.3 feet (the length of the hypotenuse of a right triangle with sides of 50 and 15 feet in length), and that the bus was traveling at a speed of 65 miles per hour or 95+ feet per second. It accordingly could reasonably have concluded from simple arithmetical computations that it required approximately 3½ seconds for the Ford to cover the distance of 52.3 feet, and that in the same period of time the bus was covering a distance of 332 feet. Actually, there was other relevant testimony which the jury could have believed and which would support a conclusion that the time elapsing between the Ford's entry into the wrong traffic lane and the collision was much greater than 3½ seconds but the testimony is general in character and is incapable of exact measurement or analysis,[2] and for the purposes of this opinion we will accept the 3½ seconds as the greatest time period which the evidence will support.

The jury was not called upon to decide what rate of speed it regarded as reasonable for the bus as it approached the oncoming automobiles. Neither was it asked to fix the exact speed of the bus. It found only that the bus was traveling at a rate of speed in excess of 55 miles per hour and at an excessive rate of speed. According to the testimony of Continental's bus driver the highway was "wet enough to be slippery." The shoulders of the highway were wet and muddy making their use by the bus for avoiding a collision highly undesirable if not actually dangerous. A string of three cars was approaching, the second in the string known to the driver of the bus to be traveling at a greater rate of speed than the first and the third at about the same rate of speed as the second, a situation persenting to the mind of a reasonable man the possibility that the second or third automobile might pull into its left-hand lane to undertake to pass the car in front of it if the passing distance seemed reasonably sufficient, or that one of the automobiles might skid into the wrong traffic lane upon a sudden application of its brakes. The bus was a heavy vehicle, almost certain if traveling at a high rate of speed to visit destruction upon any vehicle with which it collided and death upon its occupants. These facts and circumstances and not unreasonable inferences drawn therefrom would, in our opinion, support a conclusion by a jury that a speed of 40 to 45 miles per hour was a reasonable rate of speed

---

[2]Mrs. Gross, driver of the Chevrolet and a party defendant, testied that after colliding with the Ford she closed her eyes, opened them, turned off the ignition, turned to her companion and asked if she was all right and heard the crash of the collision as her companion was answering. It hardly seems reasonably probable that all of the events detailed could have occurred in 3½ seconds.

for the bus to have been traveling when the Ford entered its traffic lane.

The bus driver testified that he was about a half of a mile south of Nelson Creek bridge when he observed the three automobiles approaching from the north and that at that time the Hudson, the leading automobile, was about three-tenth of a mile north of the bridge. He thus had ample time and distance in which to reduce his speed to a reasonable rate before reaching a point where his speed would create a situation of imminent danger if one of the automobiles should enter his lane of traffic. He testified that he did not reduce his speed, however, and that he at no time applied his brakes. The jury could reasonably have concluded that if the speed of the bus had been reduced to 40 to 45 miles per hour when the driver was first confronted with the inherent danger in the situation and had been traveling at that speed when the Ford entered the bus' lane of traffic the collision would never have occurred. If the bus had been traveling at a speed of 40 miles per hour or 58-2/3 feet per second it would have needed 5½+ seconds to cover the 332 feet to the point of collision and the Ford would have had two additional seconds to clear from its path. If it had been traveling at a speed of 45 miles per hour or 66 feet per second it would have needed 5 seconds to cover the distance to the point of collision and the Ford would have had 1½ additional seconds in which to clear from its path.

The record reflects that at the time the collision occurred the Ford was traveling almost directly east and was in process of leaving the paved portion of the highway and that the bus was traveling at a slight angle toward the east edge of the pavement. The bus driver testified that he swerved to his right when he was about 15 or 20 feet from the Ford. The photographs reflect that the front of the bus hit the Ford on its right side and that the left front wheel of the bus ran up on the Ford near the rear of its single right-hand door, crushing the Ford. This crushing force left a place gouged out of the pavement a few feet from the east edge thereof. The bus came to a stop on the east shoulder of the highway 145 feet from the point of collision. If the width of the bus and the length of the Ford are shown by the evidence our attention is not directed thereto. The jury had photographs of both before it. The jury could reasonably have concluded that by traveling eastwardly at its speed of 14.65 feet per second a distance of approximately 29.30 feet in two seconds or even 22 feet in 1½ seconds the Ford would have cleared completely from the path of the on-coming

bus, and thus that the excessive speed of the bus actually contributed to cause the collision.

We recognize that a detailed analysis of opinion testimony of time and distance in reconstructing an automobile collision and the events immediately preceding it may not reflect the true situation but it is a means of reconstruction which cannot be denied to a jury, and if that method of reconstruction will support the verdict of the jury our duty leaves us no alternative but to adopt it.

■ We hold that there is evidence of probative value in the record supporting the jury's finding that the excessive speed at which Continental's bus was being operated at the time of and immediately before the collision was a proximate cause of the collision. If Continental's negligent and excessive speed proximately contributed to cause the collision it is immaterial to Continental's liability that the negligence of Mrs. Gross also contributed thereto or that such concurring cause may not have been reasonably foreseeable. Walker v. Burgdorf, 150 Texas 603, 244 S.W. 2d 506, 510; McAfee v. Travis Gas Corp., 137 Texas 314, 153 S.W. 2d 442, 447; Gulf C. & S. F. Ry. Co. v. Ballew, Texas Com. App., 66 S.W. 2d 659, 661. It is a sufficient predicate of Continental's liability that the excessive speed of the bus was a substantial factor in bringing about the collision. Hopson v. Gulf Oil Corp., 150 Texas 1, 237 S.W. 2d 352, 355.

■ The Court of Civil Appeals erred in rendering judgment that the plaintiffs take nothing against Continental. Continental's brief in the Court of Civil Appeals contained other points of error one of which (Point 11) reads as follows:

"The error of the Trial Court, assuming that the Bus Company was not entitled to judgment as a matter of law, in refusing to set aside the jury's verdict against it on the ground that such verdict was so totally and wholly against the great weight of the evidence as to be clearly wrong. (Based on Paragraph 5, Amended Motion for New Trial, Tr. 358)."

Paragraph 5 in Continental's amended motion for new trial reads as follows:

"because the findings of the jury to Special Issues Nos. 1 through 79 and the judgment rendered thereon by the Court are totally and wholly against and contrary to the great weight and preponderance of the evidence and are based upon speculation,

conjecture, assumption, presumption as to be clearly wrong and unjust."

Plaintiffs contend here, as they did in the Court of Civil Appeals, that point of error No. 11 was insufficient under our Rules of Civil Procedure to raise the question of the insufficiency of the evidence because it refers only to paragraph 5 in the motion for new trial which paragraph is too multifarious to be considered as a proper assignment of error. If the Court of Civil Appeals or this court were confined to a consideration of paragraph 5 of the motion for new trial as a predicate for the point of error we would be inclined to agree with the plaintiffs because the paragraph is so general as to point out no specific error to the court. It even asserts that findings in Continental's favor in response to the issues on discovered peril are against the great weight and preponderance of the evidence. However, Continental's motion for new trial also contained, in separately numbered paragraphs, assertions that the jury findings of Continental's negligence and proximate cause in answer to issues 1 and 2 on proper lookout, 4 and 5 on failure to apply brakes, 10 and 11 on excessive speed, and 13 and 14 on illegal speed, were unsupported by probative evidence and were against the overwhelming weight and preponderance of the evidence. These assignments adequately meet the requirements of Rules 321, 322 and 374, Texas Rules of Civil Procedure. Point of Error No. 11 was germane to these assignments in the motion for new trial and the failure of the point to so state did not render it legally insufficient to preserve the questions raised in the assignments. Rule 418, Texas Rules of Civil Procedure, requires only that points of error be "germane to one or more assignments of error," not that they correctly state to which assignments they are germane on penalty of being refused consideration.

■ Plaintiffs further urge that Point of Error No. 11 and the questions presented in the assignments to which we have alluded were waived by Continental's failure to brief them. Continental briefed its "no evidence" Points 1 and 2 in connection with these same assignments at some length. It made no restatement of the evidence in connection with Point 11, contenting itself with respect thereto with this statement: "Under this point we adopt the statement from the record contained in our discussion of our First and Second Points." By way of argument of the point it stated only that the verdict of the jury against the bus company was "so obviously against the overwhelming preponderance of the evidence as to indicate that it was a result of some

improper element, such as bias, sympathy or prejudice" and was "so clearly wrong that it should be set aside." Having analyzed the evidence for the purpose of convincing the court that there was no evidence of probative force supporting the verdict, no good purpose could have been served by another analysis of the same evidence under Point 11, and having argued at length that the evidence was, in law, no evidence, what more could Continental have said under Point 11 than it did say?

■ The amended motion for new trial containing the assignments of error on which Point 11 was based was a joint motion filed on behalf of Continental, J. P. Lanham, the bus driver, and American Motorists Insurance Company. American Motorists had intervened in the case seeking subrogation to the extent of Workmen's Compensation benefits paid to Lanham. Lanham and American Motorists did not perfect an appeal from the judgment which denied a recovery to Lanham. Plaintiffs argue that since Lanham and American Motorists did not appeal the assignments of error were lost to them and being lost to them must be held to have been lost to Continental also. We do not agree.

■ The Court of Civil Appeals did not rule on Point of Error No. 11.[3] After concluding that there was no evidence to support the findings of proximate cause the Court of Civil Appeals said:

"Our conclusion that these points present error requiring a reversal and rendition of the judgment against such appellant [Continental] renders unnecessary any consideration of appellants' remaining points which are directed to procedural and evidentiary errors and to the proposition that the verdict of the jury is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong, each of which, if sustained would require a reversal and remand of the cause for retrial."

When a Court of Civil Appeals holds, on proper assignment, that a verdict of a jury or a judgment of a trial court has no support in the evidence we will assume, in the absence of a contrary showing in the opinion of the Court of Civil Appeals, that it has also sustained any proper assignment that the verdict or

[3](In a dissenting opinion filed on original submission by the writer of this opinion it was stated that the Court of Civil Appeals sustained the point. See 298 S.W. 2d 93. The statement was erroneous.)

the judgment is against the great weight and overwhelming preponderance of the evidence, Barker v. Coastal Builders, 153 Texas 540, 271 S.W. 2d 798, but we will not indulge that assumption where the opinion of the Court of Civil Appeals shows clearly, as does the opinion in this case, that the assignment on insufficiency of the evidence has not been considered. McWilliams v. Muse, Texas, 300 S.W. 2d 643, 646. The cause will therefore be remanded to the Court of Civil Appeals for consideration of Continental's Point 11 and other points which have not been considered. The position of this Court regarding action to be taken by the Court of Civil Appeals on Point of Error No. 11 is harmonious with the view expressed in the dissenting opinion in Barker v. Coastal Builders, supra, wherein it is said (271 S.W. 2d 812) :

"If in the light of our analysis of the evidence and its mature consideration thereof the Court of Civil Appeals should conclude that the jury verdict is contrary to the great weight and preponderance of the evidence, it should have no hesitancy in reversing the judgment and remanding the case for retrial. If it should reach the opposite conclusion, it should affirm. In either event what we have said on the law question of 'no evidence' should be no impediment and no source of embarrassment to the Court of Civil Appeals' own proper evaluation of the evidence on the fact question of 'insufficient evidence' because that court and that court alone is made the final arbiter of that question."

In our opinion filed on original submission we stated that we found no merit in the application for writ of error filed in this court by Mrs. Gross. We remain of that opinion.

The judgment entered herein on December 12, 1956, affirming the judgment of the Court of Civil Appeals is set aside and judgment is now rendered reversing the judgment of the Court of Civil Appeals and the cause is remanded to that court as to all parties for further proceedings consistent with this opinion.

Chief Justice Hickman not sitting.

Opinion delivered May 22, 1957.

MR. JUSTICE GRIFFIN dissenting.

I have not changed my mind about this case and dissent from its present disposition.

I have set out my views at great length in the former majority opinion, and I adopt it as the dissent in this cause.*

To me, the evidence shows beyond controversy that the Ford "jumped out" in front of the respondent's bus, as testified to by petitioners' own witness, Mitchell. When this happened (and without any negligence on the part of the bus driver) there did not remain sufficient time and distance for the bus driver to have done anything to avoid the collision. Therefore, the Bus Company should not have any damages adjudged against it.

Opinion delivered May 22, 1957.

Mr. Justice Griffin, dissenting.

This is a suit by Mrs. Patricia Biggers and her children against the Continental Bus System, Inc. for damages resulting from a collision between a Ford car driven by Enoch A. Biggers, Jr., husband and father of petitioners, and a passenger bus belonging to Continental Bus System driven by Jack P. Lanham, an employee of the Bus Company. The collision took place on Highway 75 about eight miles north of Huntsville, Texas, about 8:52 a.m. on December 20, 1951. Enoch A. Biggers, Jr. was instantly killed in the collision.

The bus belonging to the Bus Company was proceeding generally in a northerly direction from Houston to Madisonville, Texas, upon Highway 75, and was on its own proper right side of the highway, well to the right of the center stripe of such highway. The collision between the vehicles took place a few hundred feet north of a bridge across Nelson Creek on said highway. The highway was 24 feet wide at the point of the collision and the bridge was 28 feet wide. As the bus was being driven north along the highway, three automobiles were coming south down the highway. The first was a Hudson car; approximately 100 or more feet behind the Hudson was the Ford car driven by Enoch A. Biggers, Jr., and a short distance behind the Ford was a Chevrolet automobile driven by Miss Betty Joe Epps accompanied by Mrs. Ernest De Jernett. It had been raining the night before and the paved portion of the highway was wet, but there is no evidence that the highway was slick. As the Hudson approached the bridge across the highway the driver of the Hudson slowed down to observe the creek to ascertain

---

*The majority opinion on first hearing, by Justice Griffin, is now entered as his dissent in the present case, as follows:

if it was too muddy for fishing. The shoulders on both sides of the highway were wet and muddy. There is evidence that the Hudson had been driven along at 40 to 45 miles per hour and slowed to 10 to 15 miles per hour. The Ford car was being driven faster than the Hudson, so when the Hudson slowed down the driver of the Ford put on his brakes to avoid a collision with the Hudson. Mrs. Gross (then Miss Epps, who by the time of the trial had married Wm. Gross) saw the brake light of the Ford go on, and she put on her brakes to avoid colliding with the Ford. Her brakes "locked," i.e., the brakes locked her wheels and she slid into the Ford striking it a little to the right of the center of the rear bumper. This resulted in the Ford car being propelled diagonally eastward across the highway and in front of the bus and into the bus' righthand side of the highway. The collision resulted between the bus and the Ford and all three occupants of the Ford were killed instantly.

Upon a trial before a jury the jury answered 79 special issues favorable to the plaintiffs and judgment was rendered for plaintiffs against the Bus Company and Mrs. Gross and husband in the sum of $101,800.00. The jury found the driver of the bus guilty of negligence in failing to keep a proper lookout; in failing to apply his brakes; and in driving at an excessive rate of speed; in driving at a speed in excess of 55 m.p.h., and found each act of negligence to be a proximate cause of the collision. The jury found Mrs. Gross guilty of certain negligent acts which were also a proximate cause of the collision. Plaintiffs plead "discovered peril" as a ground of recovery and the trial court by appropriate issues submitted this ground of liability. The jury, in answering these issues, found that the discovery by the bus driver of the perilous position of the deceased did not occur at such time that the driver could have avoided the collision. Therefore, any liability on the part of the Bus Company by virtue of the doctrine of discovered peril is not in the case as presented to us. All parties are agreed that no recovery can be had under that doctrine.

Upon appeal the Court of Civil Appeals reversed and rendered the judgment against the Bus Company upon the ground that, as a matter of law, the negligent acts of the bus driver (assuming that he was negligent) were not a proximate cause of the collision. The judgment of the trial court was otherwise affirmed. 277 S.W. 2d 228. A more detailed statement of facts will be found in the Court of Civil Appeals' decision.

All parties agree that plaintiff must recover, if at all, under

the findings of the jury as to primary negligence and proximate cause. The plaintiffs, having recovered a judgment in the trial court on favorable jury findings, and this judgment having been rendered against plaintiffs on "no evidence," it becomes the duty of this Court "to examine and consider all of the evidence bearing on the controlling issues, and having done so, to decide whether there is evidence of probative value to support the answers made by the jury to the issues." Hall v. Medical Bldg. of Houston, Texas, 1952, 151 Texas 425, 251 S.W. 2d 497, 498.

It is also well settled that there can be more than one proximate cause of a collision, and that all those whose negligence is a proximate cause will be liable in damages for the results of the collision. Walsh v. Dallas Railway & Terminal Co., 140 Texas 385, 167 S.W. 2d 1018; Blakesley v. Kircher, Comm. App., 41 S.W. 2d 53, 55; Northern Texas Utilities Co. v. Floyd, Texas Civ. App., 21 S.W. 2d 6, wr. dism. w.o.j.; 30-B Texas Jur. 223, Sec. 44.

For a negligent act or omission to be a proximate cause, the result of such act must be one which was a foreseeable result. "But it seems to us that as applied to the law of negligence, at least, a better ground for the rule [of proximate cause] is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or fail to do an act when it was not anticipated and should not have been anticipated, that it would result in injury to anyone. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed." Texas & P. Ry. Co. v. Bigham, 1896, 90 Texas 204, 38 S.W. 162, 1. c., 2nd col., p. 163. Safeway Stores of Texas v. Brigance, 1938, 118 S.W. 2d 812 (5), dism., w.o.j.; Phoenix Refining Co. v. Tips, 1935, 125 Texas 69, 81 S.W. 2d 60 (1); City of Dallas v. Maxwell, Com. App., 1923, 248 S.W. 667 (2, 3); 30-B Texas Jur. 217, Sec. 40, and p. 222, Sec. 43.

It is not necessary that the defendant should or would reasonably anticipate the very consequences or the exact nature of the plaintiff's injury or the precise manner of its infliction in order that such consequence be foreseeable. "* * * It is sufficient that the defendant would reasonably have anticipated consequences or an injury of the general nature of that which ensued. * * *"

Hopson v. Gulf Oil Corp., 150 Texas 1, 237 S.W. 2d 352, 356; Sullivan et al. v. Flores, 134 Texas 55, 132 S.W. 2d 110, 111.

"* * * A prior or remote cause cannot be made the basis of an action for damages if it does nothing more than furnish the condition or give rise to the occasion which makes the injury possible, if such injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have occurred but for such condition. Panhandle & S. F. Ry. Co. v. Sledge (Texas Civ. App.) 31 S.W. (2d) 146, 149; Sledge v. Panhandle & S. F. Ry. Co. (Texas Com. App.) 45 S.W. (2d) 1112. * * *" Phoenix Refining Co. v. Tips, supra.

"It is well settled that a person is not bound to anticipate negligent or unlawful conduct on the part of another. Texas & N. O. R. Co. v. Brannen, 140 Texas 52, 166 S.W. 2d 112; Seinsheimer v. Burkhart, 132 Texas 336, 122 S.W. 2d 1063; Minugh v. Royal Crown Bottling Co., (T. C. A.) 267 S.W. 861, wr. ref. * * *" De Winne v. Allen, 154 Texas 316, 277 S.W. 2d 95 (2, 3).

"A motorist may assume that a vehicle approaching on its own right side of the road will remain on that side, and he is not expected to anticipate that such vehicle will leave its side of the road and turn into his path." 60 C.J.S. 733-734, Sec. 317a.

With these principles in mind let us examine the evidence in this case, viewed most favorably to the plaintiffs, and in support of the judgment of the trial court. The bus driver stated that the Ford turned in front of the bus at a distance of some 15 or 20 feet, but he stated that was "just an estimate in feet. I couldn't be exact, * * *." He stated that as soon as he saw the Ford coming across the road into his lane of traffic, he swerved his bus to the right. Mitchell saw the bus swerve only one time, and that immediately prior to the collision. Mitchell was driving a gasoline transport truck only a short distance behind the bus and testified that he saw the bus, the oncoming cars, the Hudson slow down, the Ford "jump" out in front of the bus, but he did not see the actual collision as he glanced down at his tachometer right after the Ford came across in front of the bus. Mrs. Gross, the driver of the Chevrolet, testified that she saw the brake lights on the rear of the Ford go on, that she realized the Ford was slowing down; that she stepped on her brakes and slid into the Ford; that she immediately closed her eyes, and turned off her ignition key and turned to her passen-

ger, Mrs. De Jernett, and inquired if she were all right, and immediately heard the crash of the collision, and looked back over her left shoulder—her car having stopped—and saw the bus on top of the Ford, on the dirt shoulder of the highway and pushing the Ford in front of it. She did not see the Ford cross the highway. The bus driver testified that he did not know how fast the Ford was going at the time it pulled out in his lane of traffic, but that the Ford could have been going 30 miles per hour or down to 25 miles per hour. In answer to the query by plaintiffs' counsel as to whether the Ford could have been going 10 or 15 miles per hour, the driver answered, "I don't know, it might have been 10 or 15 miles an hour, or 20 or 25 miles per hour, or 30 miles per hour." The above was the slowest any witness testified the Ford was going. This shows to have been a pure guess. However, we will consider this as evidence binding on the Bus Company. The record does not show how many feet per second a car traveling 10 miles per hour will cover. It shows that at 20 miles per hour a car will travel 29.3 feet per second. Therefore, we can easily calculate that at 10 miles per hour a car will travel 14.65 feet per second; at 15 miles per hour it will travel 22 feet per second. The plaintiff is entitled to have the benefit of the slowest speed that the record will support in order to give the driver of the bus the longest time for reaction. As to the distance between the bus and the Ford at the time the Ford crossed the middle line dividing the highway into two lanes, the plaintiff is entitled to have the farthest distance the record will support. We think there can be no doubt that if the Ford crossed into the traffic lane in such a short time the bus driver could not put on his brakes, or slow his speed before the bus was on the Ford car, then the failure on the part of the bus driver to keep a proper lookout, to slow down, or apply the brakes could not possibly be a proximate cause of the collision.

Respondents' witness, Mitchell, testified that the Ford was 150 feet to 175 feet in front of the bus when it came over in front of the bus. The faster the bus was traveling, the shorter time it would take to close the distance between the bus and the Ford. Mitchell testified he was going 40 to 45 miles per hour at the time, and the bus was making 20 to 25 miles per hour more than he. The jury found that the bus was traveling in excess of 55 mph.; therefore, 56 mph. is the slowest speed which we may assume the bus was traveling. At 56 miles per hour the record shows the bus would cover 82.13 feet per second. The plaintiff is entitled to have us accept 10 miles per hour, or 14.65 feet per second, as the speed of the Ford, and 56 miles per hour,

or 82.13 feet per second as the speed of the bus at the time the Ford turned into the traffic lane occupied by the bus. This means both vehicles were coming together at a rate of 96.78 feet per second—the total of both speeds. Taking the greatest distance the record shows those vehicles were separated at this time as 175 feet, the collision occurred between the two vehicles in less than two seconds, or to be exact—1.8 seconds. It also demonstrates that speed at which the driver was driving the bus could not be a proximate cause of the collision, except as said by the Court of Civil Appeals "* * * only in some such sense as that if its bus had not been on the highway at all the collision would not have occurred." See also East Texas Motor Freight Lines v. Loftis, 148 Texas 242, 223 S.W. 2d 613, 616; Davis v. Younger Bros., Texas Civ. App., 260 S.W. 2d 637, wr. ref., n.r.e., and cases therein cited. The speed of the bus did nothing more than furnish the occasion for the collision, but could not, under the facts in this case as we have detailed above, be a proximate cause thereof.

Petitioners contend that instead of taking the testimony of witnesses as to the distance between the two vehicles immediately preceding the time of the collision we are required to take into consideration the time element, if we are to view the facts most favorable to upholding plaintiffs' jury verdict. They cite the testimony of Lanham, the driver of the bus, that the Ford came down the highway in the bus' lane of traffic for a distance of 40-50 feet south, and 10-15 feet east after the Ford was knocked out of its own proper lane of traffic. A reading of the whole of Lanham's testimony shows that this distance was only a guess or estimate. But taking his testimony on this point we know the Ford did not go straight south, and then straight east to the point of collision. Of necessity, it must have proceeded at an angle. Figuring the distance traveled by the Ford as a right angle triangle whose base is 15 feet and its leg 50 feet, we find the hypotenuse would be 52.3 feet. This would represent the distance actually traveled by the Ford to the point of impact. How long would it take the Ford to traverse this 52.3 feet traveling at 10 mph, or 14.6 feet per second? A calculation will show the elapsed time to be 3.58 seconds, or practically 3½ seconds. The bus had to travel the same length of time from the entry of the Ford into the bus' lane of traffic to the point of collision as that traveled by the Ford. For the collision to occur it was necessary that both vehicles reach the point of impact at the same time. If the bus were traveling for a longer period of time, it would have cleared the point of collision. It

makes no difference how far the bus traveled, it, of necessity, also had to travel for a period of 3.58 seconds.

An examination of the photographs introduced in evidence shows that the right front of the Ford struck the front end of the bus at approximately the center of the front of the bus. The impact is shown by a very distinct "v" shaped curving-in of the front of the bus with the apex of the "v" at the center of the width of the bus. The left front wheel of the bus ran into and upon the right side of the Ford about the center of the right front door. The left front wheel of the bus shows to be inside the Ford and immediately in front of, but touching, the front of the front seat. From the photographs it appears that the left front wheel of the bus hit at about one-third the distance between the front and rear of the Ford. To have cleared the point of impact the whole of the Ford would have had to continue until the rear of the Ford was past the total width of the bus. The photographs show that at the time of the impact the Ford was not traveling straight across the path of the bus, but it was traveling at an angle, or diagonally, to the path of the bus. Such being true, it would have required additional time for the Ford to have cleared the bus and the collision not to have resulted. To have cleared the point of impact—had the Ford been going squarely across the path of the bus—it would have been necessary not only for the two-thirds length of the Ford to have cleared, but also the Ford must have traveled the additional distance of one-half the width of the bus. The Ford traveling diagonally would have required an appreciably longer space of time, as it would have been necessary for it to also clear the length of the bus. This time would have been at least two seconds. This calculation gives the plaintiff the benefit of the greatest possible distance and the shortest possible time in which the Ford could have cleared the bus. There was no evidence in the record that will support an assumption that the bus was more than 3.58 seconds in reaching the point of impact. Under all these facts and circumstances, we hold there was not sufficient time involved to have permitted the bus driver to have done anything to have avoided the collision. We also hold that the failure of the bus driver to reduce his speed, or put on his brakes, was not a proximate cause of the collision.

For a negligent act or omission to be the proximate cause of an injury, the consequence of the act or omission must be a consequence which is probable according to ordinary and usual experience. Dallas Railway & Terminal Co. v. Hendrix, 261 S.W. 2d 610, Texas Civ. App. 1953, no writ history. In the recent case

of Wiley v. Mercer, 282 S.W. 2d 87, Texas Civ. App., 1955, no writ history, (a plea of privilege case), the plaintiff was riding in an automobile on her own proper side of the highway when her car was hit from the rear by another car. As a result of this collision the car was knocked out of control across the highway into the path of defendant's truck and the collision for which suit was brought resulted. Plaintiff pleaded the above facts more in detail and also pleaded that defendant was driving at an illegal and negligent rate of speed. It was further alleged that had defendant been driving at a legal and not negligent rate of speed he could have stopped the truck or otherwise avoided the collision. The facts as made by the allegations of the petitioner are similar facts to those in the case at bar. The trial court held, as a matter of law, that the allegations above referred to failed to show that the acts of the defendant, which included the speed at which he was driving, were a proximate cause of plaintiff's injuries. In affirming this holding by the trial court the Court of Civil Appeals said:

"We have carefully considered the pleadings of the plaintiff and have concluded that the trial court placed the proper construction thereon. The pleadings show that Mrs. Wiley, one of the plaintiffs, was operating her automobile in a column of cars in a westerly direction at a rate of speed not exceeding thirty-five miles per hour, that her car was struck in the rear by a car driven by one Herman Moen and without warning was knocked into the path of the oncoming truck driven by the agent of the defendants. It is well settled that the foreseeableness is a necessary element of proximate cause. We hold, as a matter of law, that the driver of the truck was not chargeable with foreseeing that a third party such as Herman Noen would negligently strike the car of the plaintiffs from the rear and cause it to, without warning, be driven upon the side of the highway immediately in front of the truck. Dallas Railway & Terminal Co. v. Hendrix, Texas Civ. App., 261 S.W. 2d 610, [no writ history] ; Reeves v. Tittle, Texas Civ. App., 129 S.W. 2d 364 [wr. ref.] ; Gann v. Murray, 151 Texas 130, 246 S.W. 2d 616."

In our case, we hold that the speed of the bus, as a matter of law, was not a proximate cause of the collision between the Ford and the bus. It is not a usual and customary happening that one car in a line of traffic will be unable to stop in time to prevent a collision with the car next ahead in the traffic. Mrs. Gross, the driver of the Chevrolet, did not foresee that her brakes would lock causing her to skid into the rear of the Ford. Neither is it usual and customary for one car in a line of traffic

to collide with and propel the car hit into the righthand side of the highway being used by approaching traffic. Therefore, such happening cannot be foreseeable so as to be included in the definition of "proximate cause."

On the question of the failure of the bus driver to keep a proper lookout as being a proximate cause of the collision, we agree that there is no evidence in the record to support such finding. Until the Ford started across the center line into the traffic lane occupied by the bus, the record shows nothing at all to indicate that the Ford car would do otherwise than to remain in its own proper lane of traffic. In fact, Mitchell testified that previous to this time, the Ford had pulled out of its lane and over to the left in an apparent attempt to pass the Hudson, and the driver, apparently seeing he did not have room to pass safely, immediately dropped back into his proper southbound traffic lane. Had the bus driver seen this, which he did not, it would only have indicated to him that the Ford would not pull out in front of the bus. There is not one word of testimony from any witness, fact or circumstance in this record which can be construed as indicating that prior to the time the Ford pulled out in front of him, the driver of the bus should have done one thing to avoid this collision. We agree with the Court of Civil Appeals that under the circumstances of this case the bus driver was under no duty to anticipate the Ford would pull out in front of him until it actually did pull out of its line of traffic. The bus driver did not see the collision between the Chevrolet and the Ford. Neither did Mitchell, and Mitchell testified he could not see the collision due to the closeness of the cars and the fact that they were "bunched together" although Mitchell testified he was watching both the bus and the three approaching cars.

We think the case of Volkmer v. Curlee, 1953, 261 S.W. 2d 870, wr. ref., is controlling on the question of failure to keep a proper lookout. In that case Volkmer was driving down a street which intersected the street on which Curlee was driving. The street on which Volkmer was traveling had a "stop" sign at the entrance to the street on which Curlee was traveling. The street on which Curlee was traveling had no "stop" sign at its intersection. Volkmer testified he intended to stop at this sign, but that when he put on his brakes they failed to function, and he ran on out into the street and collided with Curlee's car, striking it broadside with the front of his (Volkmer's) car. Upon the trial of the cause the jury convicted Volkmer of negligent acts, a proximate cause of the collision,

but also found Curlee guilty of contributory negligence in failing to keep a proper lookout which was found to be a proximate cause of the collision. Upon proper motion the trial court disregarded the jury's finding on contributory negligence and rendered judgment for Curlee against Volkmer. Upon appeal, Volkmer contended that there was evidence to support the jury's finding of contributory negligence and proximate cause. The Court of Civil Appeals affirmed the holding, among other things, that the element of "foreseeableness" was absent, so there could be no proximate cause. The Court said:

"Appellant testified that as he approached the intersection he observed the stop sign. He applied his brakes expecting to stop and was surprised when he failed to stop, and even after the event could not explain his failure to stop. It must be inferred that as appellant approached the intersection his speed was such and his control of his vehicle was such that he anticipated bringing his vehicle to a stop. And for the jury to hold that the failure of appellee to keep a proper lookout was a proximate cause of this collision, it would be necessary for the jury to find that appellee should have foreseen the occurrence of an event, the happening of which appellant himself cannot explain and the opposite of which appellant anticipated. To so find would be contrary to the experience of mankind."

So, in our case, Mrs. Gross testified that she saw the Ford stopping or slowing down; she saw the brake lights on the Ford go on; that she stepped on her brakes fully expecting them to hold and prevent her colliding with the Ford; that for some unexplained reason they did not hold, and she collided with the Ford. The evidence shows beyond controversy that this collision pushed the Ford across into the lane in front of the bus. We fail to see how the bus driver can be held to have been able to foresee this collision, or some similar happening which would propel the Ford into his lane.

In the case as bar no serious contention is made, nor could it be made, that anything done by the bus driver contributed to the loss of control of the Ford car when it came in front of the bus. We think what was said by the Court in the case of Surkey v. Smith, 1940, 136 S.W. 2d 893, wr. ref., is applicable to our case:

"* * * We think the evidence corroborates rather than contradicts the testimony of Smith that he did not see Surkey until

he struck him. *He did not sound his horn, he did not apply his brakes, he made no effort to swerve his car in an effort to avoid striking Surkey. It would be contrary to human nature not to make some effort to prevent striking a person after discovering his perilous position.* Furthermore, it is shown that this accident happened very suddenly. If Smith was traveling as slow as twenty miles per hour he was traveling thirty feet per second, and it would thus appear that from the time Smith passed the Sharp car until he struck Surkey was less than two seconds, * * *." (Emphasis added).

We have carefully studied the record in this case and from all the facts and circumstances we find the Court of Civil Appeals to be correct in holding that the element of foreseeability is wholly lacking, and, therefore, no liability can be imposed upon the defendant Bus Company.

Mrs. Gross filed an application for writ of error in which she asked that the cause be reversed and remanded to her. We find no errors pointed out in the Court of Civil Appeals or in this Court which would justify a reversal of this cause.

The judgment of the Court of Civil Appeals is in all things affirmed.

Opinion delivered December 12, 1956.

Rehearing overruled July 10, 1957.