Danny BRIDGES, Appellant,

v.

Anna VAUGHAN, Appellee.

No. 5421.

Court of Civil Appeals of Texas, Waco.

March 20, 1975.

**364**

Wilson, Berry, Jorgenson & Johnson, Don C. Hood, Dallas, for appellant.

Henderson, Bryant & Wolfe, Sherman, for appellee.

## OPINION

JAMES, Justice.

This is a head-on automobile accident case wherein the Defendant-Appellee was in the wrong traffic lane. Acting pursuant to a jury verdict in which Plaintiff and Defendant were each found guilty of negligence proximately causing the accident, the trial court entered a judgment that Plaintiff take nothing. We affirm.

This case arises from a head-on collision in Grayson County, Texas, between two automobiles on U.S. Highway 75, a divided four-lane highway. Plaintiff-Appellant Danny Bridges was driving south in the left-hand southbound lane while the Defendant-Appellee Mrs. Anna Vaughan was either proceeding or stopped (as we shall hereinafter discuss in more detail) headed north in the same lane as Mr. Bridges, when the two cars struck each other. Mr. Bridges sued Mrs. Vaughan for personal injuries.

Trial was to a jury which found Defendant Mrs. Vaughan guilty of four grounds of negligence each proximately causing the accident as follows: (1) in driving on the highway in a direction other than the direction designated one way; (2) in stopping her vehicle on the paved part of the highway, (3) in failing to keep a proper lookout, and (4) in failing to yield the right-of-way.

The jury further found the Plaintiff Bridges guilty of two grounds of negligence each proximately causing the accident as follows: (1) in failing to keep a proper lookout, and (2) in failing to move his vehicle into the right-hand southbound lane of the highway before the collision.

In accordance with the jury verdict, the trial court entered judgment that Plaintiff Bridges take nothing, from which judgment Plaintiff appeals. We affirm the trial court's judgment.

Plaintiff-Appellant attacks the jury's finding that he (Plaintiff) failed to keep a proper lookout, asserting that there is no evidence to support such finding, and that such finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. He further attacks the jury's finding that his (Plaintiff's) failure to move his vehicle into the right-hand southbound lane before the collision was negligence, contending that there is no evidence to support such finding, and that such finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. Plaintiff-Appellant says he had no duty to anticipate Defendant-Appellee's wrong-way travel, that nothing alerted him early enough to avoid the collision, that he had no duty to take evasive action by moving into the right-hand southbound lane, and that he was prevented from so doing. Based upon this record we do not agree with these contentions.

This accident occurred about 5:00 P.M. on Saturday, September 18, 1971, on U.S. Highway 75 in Sherman, Texas, near a Sears store, which store and parking lot adjacent thereto is located on the west side of said highway. At the place of the collision, Highway 75 is a north-south highway divided by a curbed median; and at said point there are two southbound lanes, each thirteen feet wide, with a ten-foot shoulder adjoining the west southbound lane. There was a shoulder two feet wide between the inside southbound lane and the median curb. There were three places of entry or exit to or from the Sears parking lot leading directly into the southbound por-

tion of the highway. Fallon Drive, an east-west street, intersects Highway 75 on the north side of the Sears parking lot; the south line of Fallon Drive is also the north line of the Sears parking lot. From the north line of the Sears parking lot to the point of impact is 510 feet. From the north line of the parking lot to the south line of the Number 2 (or center) exit of the Sears parking lot is 683 feet. The collision took place 173 feet north of the south line of the Number 2 exit. The accident occurred on a cloudy, dry day and in clear daylight; the investigating officer, Tom Rains, testified that the visibility was "fine."

Plaintiff-Appellant Bridges was driving south in the left-hand or inside lane of the southbound portion of the highway at a speed of 55 to 60 miles per hour. He was driving a 1968 Chevelle four-door sedan which had power steering and power brakes. Charles Mauldin, a friend of Plaintiff, was seated in the right front seat as a passenger. Mauldin did not testify in the trial, the record being silent as to why he was not called as a witness.

Defendant-Appellee Mrs. Vaughan, a woman eighty-three years of age, was by herself, driving a 1953 Mercury. She drove out of the Sears parking lot through the Number 2 exit hereinabove referred to, turned to her left and headed north on Highway 75 in the inside lane of the southbound portion of said highway. This is the same traffic lane in which Plaintiff-Appellant Bridges was traveling. She proceeded north a distance of 173 feet, as measured from the south line of the Number 2 exit out of which she travelled. The collision occurred in the inside southbound lane at a point 510 feet south of Fallon Drive and 173 feet north of the south line of Exit Number 2. There was nothing in the character of the roadway that prevented Plaintiff Bridges from having a clear view of traffic on the highway for a distance of at least 683 feet south of the south line of Fallon Drive.

Mrs. Vaughan testified that when she realized she was going the wrong way on the southbound part of the highway, that she stopped next to the median curb and waited to let a southbound car pass her which car was traveling in the outside southbound lane. This car was the only car she could see except Plaintiff's car which she says at that time was "down about that light", meaning at Fallon Drive. She said she thought, "Well, I'll just wait until it (Plaintiff's car) passed, and then I'll get out of there, turn around and get out of there." There were poles in the median which kept her from crossing the median area. She went on to say, "and I just sat there with my foot on the brake and he (Plaintiff) just kept coming. Well, I knew he was going to hit because_____he just kept coming right at me. And I just sat there. That was all I could do. With my foot on the brake. I just sat there waiting. But I wasn't going. I was just standing still." She said she didn't know how long she was sitting still prior to the collision, but it "seemed like a long time." However, she said she knew it was only "a few seconds." Mrs. Vaughan made it clear that other than the southbound car that passed her, at the time she stopped on the highway, Plaintiff's car was the only other southbound car that she saw prior to the collision. This is significant, because Mr. Bridges testified there was a car traveling south in the outside southbound lane one or two car lengths behind him which prevented him from moving into the outside lane so as to avoid hitting Mrs. Vaughan's car.

Plaintiff-Appellant Bridges, a man twenty-two years of age at the time of the accident, was driving his car southbound in the inside southbound lane at a speed of 55 to 60 miles per hour. At the time he first saw Mrs. Vaughan's car, Plaintiff was at or about the place where Fallon Drive intersects with Highway 75, which was 510 feet from the point of collision. His testimony about this is somewhat indefinite; but this is the substance of it. He stated that Defendant's car was a light green or blue color, and being an old model car (1953 Mercury) that he could not tell the

front end from the back end, and assumed the car was traveling south. He said he glanced into his rear vision mirror and saw a car in the outside or right-hand south-bound lane which was one or two car lengths behind him, that he was afraid to change lanes; that he applied his brakes and skidded into Mrs. Vaughan's car. Plaintiff testified that at the time his car struck Defendant's car, he had no idea whether Defendant's car was backing up, stopped, or going forward. He said, "It looked like it was coming toward me." When asked why he didn't change into the right southbound lane since the other car was one or two car lengths behind him, and thereby avoid hitting Mrs. Vaughan's car, Plaintiff testified that he did not know. On his deposition Plaintiff testified that he did not know for sure which traffic lane Defendant's car was in when he first saw Defendant's car.

Bridges testified that he never veered to his right before the impact; however, Officer Rains testified in effect that from his examination of the front ends of the cars, it appeared that Bridges may have turned to his right immediately before the collision.

When Plaintiff Bridges was at the south line of Fallon Drive, 510 feet north of the point of impact, there was nothing to prevent him from seeing Defendant's car ahead of him in the southbound lane. There were no cars between his car and Defendant's car, and visibility was good. This is borne out by Mrs. Vaughan's testimony that she first saw the Bridges car when it was even with Fallon Drive, while she was parked at the point of impact. In other words, if Mrs. Vaughan could see Mr. Bridges's car 510 feet away, there was nothing to keep Mr. Bridges from seeing Mrs. Vaughan's car, if Mr. Bridges had been keeping a proper lookout. Likewise, the fact that her car was stopped in his lane and headed toward him should have been visible to him. The jury was warranted in concluding that if Plaintiff had been keeping a proper lookout, he would have seen that the Defendant's car was stopped in his lane when he was 510 feet away from it, and that he had plenty of time to move into his right-hand lane or to have stopped his car or have taken other evasive action. Also, the jury was warranted in finding that at no time did Mr. Bridges even try to move his car into the outside lane, and that such failure was a proximate cause of the collision. Traveling at his speed of 55 to 60 miles per hour, it was about six seconds from the time he first saw Defendant's car in his lane until the time of the collision. In short, the jury was entitled to conclude that Plaintiff failed to turn into the right-hand lane because he had not kept a proper lookout; and that if he had kept a proper lookout, he would have had ample time to move into the right-hand lane. The jury was also entitled to believe Mrs. Vaughan's testimony that she saw no car behind Plaintiff's car in the outside lane; and if such were true, that there was nothing to keep Plaintiff from changing into the outside lane.

Based upon this record, we believe the evidence is legally and factually sufficient to support the jury's findings that Plaintiff failed to keep a proper lookout, and that his failure to move his car into the outside southbound lane was negligence. These issues were properly submitted to and decided by the jury as the trier of fact, with ample evidence to support the findings made. See Southland-Greyhound Lines, Inc. v. Richardson (Tex.Com.App. 1935), 126 Tex. 118, 86 S.W.2d 731, opinion adopted by the Supreme Court; Biggers v. Continental Bus System (1957), 157 Tex. 351, 303 S.W.2d 359; Lynch v. Ricketts (1958), 158 Tex. 487, 314 S.W.2d 273, and Alexander v. Appell Drilling Co. (Waco, Tex.Civ.App.1956) 290 S.W.2d 377, error refused NRE.

Judgment of the trial court is accordingly affirmed.

Affirmed.