**EAST TEXAS MOTOR FREIGHT LINES, INC., Appellant**

v.

**Billie Jane NEAL et al., Appellees.**

No. 7935.

Court of Civil Appeals of Texas.

Texarkana.

June 17, 1969.

Rehearing Denied July 15, 1969.

Fred K. Newberry, Dallas, Bill Peek, Wheeler, Watkins, Hubbard, Patton & Peek, Texarkana, for appellant.

Cahill Hitt, Bun Hutchinson, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellee.

FANNING, Justice.

The opinion of May 6, 1969, is withdrawn and the following opinion is rendered in lieu thereof.

Billie Jane Neal, individually and as next friend for her minor children, and as ad-

ministratrix of the estate of Paul Neal, deceased, sued East Texas Motor Freight Lines, Inc., and its employee-driver, Donald Ray Ball, for damages resulting from a truck collision south of Texarkana in Bowie County, Texas, on U.S. Highway 59. At the beginning of the trial the suit against Donald Ray Ball was dismissed by plaintiffs and they proceeded solely against East Texas Motor Freight Lines, Inc.

Plaintiffs alleged the driver of defendant truck line was negligent in making an improper turn across U.S. Highway #59 near the Poor Farm Truck Stop on September 1, 1966, and that said driver blocked both lanes of northbound traffic, failed to yield the right-of-way, failed to approach for a left turn from the right half of the roadway, and failed to continue his course of travel, which plaintiffs further alleged to be, collectively and alternatively, proximate causes of the collision.

Defendant truck line denied plaintiffs' above allegations and alleged generally that Paul Neal, deceased, was negligent, proximately causing the accident, and that he was negligent in failing to keep a proper lookout, driving at an excessive rate of speed, in failing to make a timely application of his brakes, and in failing to decrease the speed of his truck, all of which were alleged to be proximate causes.

In response to special issues submitted, the jury in the cause found to the effect that defendant-appellant's driver was negligent, proximately causing the collision, in making a left turn from the lane of traffic nearest the shoulder of the road, in blocking both lanes of northbound traffic, and in failing to continue his course of travel by turning the cab to his right.

The jury further found to the effect that Paul Neal kept a proper lookout, was driving at a proper rate of speed, turned his vehicle to the left in an effort to avoid the collision, but failed to make a proper application of his brakes. However, the jury further found that Paul Neal's failure to make a proper application of his brakes was not a proximate cause of the collision.

Upon the jury's findings on damages and certain stipulations and proof on certain items of damages, the trial court entered a judgment in favor of plaintiffs-appellees in the total sum of $135,057.90. Defendant-appellant's amended motion for new trial was overruled. Appellant has appealed.

Appellant presents 8 points upon appeal. Appellant by its points 1 through 6 contends to the effect that the above referred to jury findings regarding the negligent operation of appellant's truck are supported by "no evidence", and by "insufficient evidence", and that such findings are "against the great weight and preponderance of the evidence."

For a comprehensive discussion of the law applicable to the determination of such character of points (appellant's points 1 through 6) see Chief Justice Calvert's article, " 'No evidence and Insufficient Evidence' Points of Error", 38 Tex.Law Rev., No. 4, p. 361.

Of course negligence as well as proximate cause may be proved by circumstantial evidence. Bock v. Fellman Dry Goods Co., Tex.Com.App. 212 S.W. 635 (1919).

In considering the "no evidence" questions, we must consider only that evidence, if any, which viewed in its most favorable light, supports the jury's findings, and we must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157 Tex. 351, 298 S. W.2d 79, 303 S.W.2d 359 (1957); Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952).

Viewing the evidence most favorable to the judgment as we must with reference to the "no evidence" questions, we state pertinent facts in this light as follows:

Appellant's truck was proceeding on U. S. 59 towards Texarkana, with the driver

intending to stop and get coffee at the Poor Farm Truck Stop, which was on the opposite side of U.S. 59 and to the left of appellant's driver. Paul Neal, deceased, was proceeding towards Texarkana on U.S. 59 in his gasoline truck and was to the rear of appellant's truck. U.S. 59 had two lanes for northbound traffic, had medians, and had two lanes for southbound traffic. Appellant's van was 8 feet wide and forty feet long, and the overall length of appellant's tractor-trailer unit was 50 feet. Paul Neal's gasoline truck was 8 feet wide and 35 feet long. Each of the northbound driving lanes was 13 feet wide and the improved shoulder was 8 feet wide. The weights of the vehicles and their weight ratio were established in the evidence.

The gasoline truck driven by Paul Neal collided with the rear of appellant's vehicle. The gasoline ignited and Mr. Neal was caught in the fire and he was burned to death as a result of the collision. (Damages were awarded as shown by the record; appellant has not attacked any of the findings on damages and there is no contention by appellant that the amount of the judgment was excessive.)

Appellant and appellees differ in their contentions as to the position and movements of appellant's vehicle immediately prior to the collision and time of the impact. Appellant's theory is to the effect that its vehicle was slowly angling off the outside northbound lane of traffic onto the improved shoulder when it was struck from the rear by Neal's gasoline truck, and this theory would have left the inside northbound lane clear for use by Neal's gasoline truck. The jury rejected appellant's theory as shown by its findings to the effect that appellant's driver immediately prior to the collision made a left turn from the lane nearest the shoulder of the road, and that defendant's vehicle immediately prior to the collision had been driven across the highway in such manner as to block both lanes of northbound traffic and that appellant's driver at said time failed to continue his course by turning his cab

to his right. These findings of the jury were in accord with the theory and proof offered by appellees. Appellees proved up the physical facts of the occurrence and presented certain testimony of the investigation made by Kirkpatrick, a State Highway Patrolman, and introduced in evidence numerous photographs, drawings and other exhibits, and also introduced in evidence the testimony of William B. Ogletree, a highly qualified registered professional engineer, who was an expert in accident reconstruction. To give further details as to the evidence adduced and appellees' contentions with respect thereto on the issues of negligence and proximate cause, we quote in part from appellees' brief as follows: (Omitted are various footnote references to the record and authorities referred to).

"The evidence which amply supports the foregoing findings stems from the testimony of various witnesses; however, the testimony of Mr. William B. Ogletree, who is a registered professional engineer with substantial expertise and experience in accident reconstruction, is of primary importance in this regard. Mr. Ogletree based his testimony as to the position and movements of Appellant's truck "immediately prior to the collision and at the time of impact upon personal observation of the collision scene, personal examination of the gasoline truck and an abundance of photographs of the vehicles and collision site, some of which were taken the evening of the accident and others which were taken at later dates. These various items of evidence which were considered by Mr. Ogletree will be referenced to the statement of facts and exhibits where pertinent. In this regard, Appellees would emphasize the importance of examining the various exhibits in conjunction with Mr. Ogletree's testimony. Such an examination reflects the abundance of evidence supporting Mr. Ogletree's testimony.

"Through application of scientific principles regarding velocities, impacts, angles of impact, structural strengths and related

principles of materials and engineering to the physical and demonstrative evidence, Mr. Ogletree was able to reconstruct graphically for the jury the angle of impact, the relative positions of the vehicles at the time of impact and the movements of the vehicles following the impact. Observation of the graphic demonstration of the relative positions and movements of the vehicles portrayed by Mr. Ogletree on Plaintiff's exhibits 1b and 1c clearly shows that at the time of impact, Appellant's truck was turned left at an angle across the highway, completely blocking both north-bound lanes.

"Furthermore, Mr. Ogletree was able to determine that at the time of impact, the cab of Appellant's vehicle had been turned back to the right rather than continuing its path to the left. This is likewise depicted on Plaintiff's exhibits 1b and 1c.

"The foregoing evidence will be discussed in more detail *infra* along with the physical evidence supporting that testimony. This evidence effectively rebuts the theory of Appellant as to the movement and position of its vehicle immediately prior to the collision and fully supports each of the jury findings regarding the negligent operation of that tractor trailer rig.

 \* \* \* \* \* \*

"It is undisputed that shortly prior to the collision, Appellant's rig was being driven in the outside northbound lane nearest the shoulder of the road. Thus, it is clear that if there is other evidence showing that at the time of impact, the Appellant's vehicle was turned or angled to the left across the highway and was, in fact, then blocking both lanes, the jury certainly may reasonably infer that Appellant's driver made a left turn from the outside lane in which he was driving. The reasonableness of such an inference is enhanced by the admission of Appellant's driver that at the time of the collision he was in the process of stopping for coffee at a truck-stop located on the opposite or left-hand side of the highway.

"Thus the local question here involved is the position of Appellants vehicle just prior to and at the time of impact. Mr. Ogletree's testimony establishes this position as being in exact accord with the jury findings.

"Mr. Ogletree's testimony as graphically demonstrated by Mr. Ogletree on Plaintiffs' exhibits 1b and 1c, is a summary of *his* testimony supporting the jury findings that immediately prior to the collision Appellant's vehicle made a *left-hand turn* from the outside lane and *blocked both northbound lanes of traffic*.

"Beginning with Plaintiff's exhibit 1c depicting the testimony, it is abundantly clear that this testimony is probative evidence supporting the jury findings. It shows that, at the time of impact, Appellant's truck was *turned left* across the highway toward the gate in the median and toward the truck-stop. This exhibit and testimony is clear evidence that immediately prior to the collision and at the time of impact, Appellant's truck had been driven across the highway in a manner to block both northbound lanes. In fact, it shows that Appellant's truck was blocking part of the improved shoulder, all of the outside lane and almost all of the inside lane. The scaled pink cut-outs represent the relative positions of the two vehicles at the moment of impact. The gasoline truck is the smaller cut-out of the viewer's left, and Appellant's *van* is the later cut-out in the center, with Appellant's cab being represented by the smallest cut-out located to viewer's right.

"Plaintiff's exhibit 1b depicts Mr. Ogletree's testimony. Again scaled paper cut-outs represent the two vehicles, from left to right, the gasoline truck, Appellant's van and Appellant's cab respectively. The *red* grouping demonstrates the relative positions of the vehicles at the time of impact. Mr. Ogletree testified that at the moment of impact, there was a 15–20 degree angle between the gasoline truck and Appellant's van, with the van angling left

across the highway. The *orange* grouping shows the vehicles after impact and the angle between the truck and van have now increased to about 30–40 degrees. The *yellow* grouping indicates the relative positions of the vehicles at the time the gasoline truck came to a stop. As discussed later there was no real dispute as to the final position of the gasoline truck. The blue and the green cut-outs indicate the position and movement of Appellant's tractor-trailer unit after the gasoline truck has stopped in its final position.

"In short, the foregoing testimony is to the effect that Appellant's truck was *not* slowly angling to the right off the outside lane onto the improved shoulder as contended by appellant. Instead this testimony is that Appellant's truck was turned or angled to the left across the highway from the outside lane and was thus blocking both of the northbound lanes. This is precisely what the jury found.

"At S.F. 165, while Mr. Ogletree was pasting the cut-outs into their position and angle at the time of impact the following exchange occurred:

"Q. 'While you are putting those together, maybe you can answer a question; we can save a little time. Does the—at that angle does the East Texas Motor Freight Truck block both northbound lanes of traffic?

"A. 'Yes sir.'

"One other point of note, is that although Mr. Ogletree said he could not be exact as to the point of impact regarding its position up or down the highway, *he could establish the positions of the two vehicles relative to the width of the highway and the lanes.*

"The foregoing testimony is grounded in an abundance of undisputed physical facts and evidence. First, the position of the gasoline truck following the impact was not disputed. The testimony of the investigating officer based on his exact measurements taken at the scene of the ac-

cident position the gasoline truck at the same place and angle as testified to by Mr. Ogletree. The length and width of both vehicles were undisputed. * * * (It was the length of Appellant's rig coupled with its angle on the road which caused it to block both lanes of northbound traffic). Also, the weights of the vehicles and their weight ratio were established.

"In addition, Mr. Ogletree considered an abundance of photographs of the vehicles and scenes. Space does not permit detailed discussion of each of these exhibits but an examination of the following exhibits in conjunction with Mr. Ogletree's testimony from page 143 to page 162 of the Statement of Facts readily shows the abundance of physical evidence supporting his testimony, to-wit: [Pl. Exhibits 10, 8, 9, 11, 7, 5, 4, 40, 26, 27, 25, 19, 13, and 20 in that order).

"* * * However, the photographs showed that the *right* 'frame horn' of the gasoline truck had pierced the left rear wheel of Appellant's van without having penetrated the tire itself. Plaintiff's Exhibits 21 and 5 show the right frame horn missing from the frame of the gasoline truck. (It is the piece of metal torn from the heavy channel iron, upper-middle of Pl. Exhb. 21 and lower-right of Pl. Exhb. 5).

"Plaintiff's exhibits 9 and 8 show a piece of this 'horn' imbedded in the left rear wheel of Appellant's van. (This view is of the side of the wheel from which the horn entered.) Plaintiff's exhibit 10 shows the same piercing 'horn' protruding through the wheel from the opposite side. Plaintiff's exhibits 11, 11b, and 11c show the left rear wheel of the van shortly after the accident. These pictures show the tire still inflated, indicating that the tire had not been punctured by the horn. These factors indicate that at the time of impact Appellant's van was angled to the left in the path of the gasoline truck, since the frame horn could not have pierced the wheel while leaving the tire intact otherwise. At page 215 of the Statement of Facts, Mr. Ogletree

discussed in detail why it would have been impossible for the 'frame horn' to have been driven into the wheel as shown by the foregoing exhibits and Appellant's truck been positioned as Appellant contended. At S.F. 153, Mr. Ogletree discussed how the 'frame horn' punctured the wheel. This discussion also relates to the Plaintiff's exhibits 9 and 8 showing the two cuts in the rim of the left rear wheel of Appellant's van by the channel frame of the gasoline truck at the time the 'frame horn' penetrated the wheel.

"Another grouping of the exhibits begins with plaintiff's exhibits 11 and 11a, and 5 which show the 'dock bar,' the metal bar running beneath the license plate of Appellant's van, undamaged immediately following the collision. This substantiates the testimony that Appellant's vehicle was angled to the left across the road and was not struck directly from the rear as contended by Appellant.

"Another interesting grouping is Plaintiff's exhibits 11, 7 and 7a. These show the vertical channel iron forming the left rear corner of the van bent not only forward but also to the right. Again this indicates the angle of Appellant's van. Moreover, Plaintiff's exhibit 7 shows the misalignment of the left rear duals on Appellant's van with the front duals, the rear duals being displaced substantially to the right by the impact.

"Plaintiff's exhibits 40, 26, 5 and 27 depict the crease or dent running vertically up and down the right front of the gasoline vehicle. Plaintiff's exhibit 4 clearly shows the motor of the gasoline truck misplaced far to the left, rather than crushed back into the cab.

"The foregoing is only part of the physical evidence considered by Mr. Ogletree in demonstrating the position and angle of Appellant's vehicle immediately prior to and at the time of impact. His testimony taken in conjunction with numerous other exhibits from page 143 to 161 and from page 179 to 203 of the Statement of Facts, elaborately demonstrates the grounds for his testimony that Appellant's vehicle was turned left across the highway and was blocking both northbound lanes of the highway.

"There is other testimony that is corroborative of Mr. Ogletree's testimony. At S.F. 208–209, Mr. Ogletree discussed relative speeds of the two vehicles and their role in his testimony. The actual existence of the range of relative speeds which harmonize with Mr. Ogletree's testimony is given by Appellant's own drivers. * * "

Mr. Ogletree was a duly qualified expert in accident reconstruction and the detailed testimony he gave the jury with reference to proven physical facts and graphic photographs and examination of the various exhibits he examined, were matters of accident reconstruction which were pertinent to the issues to be decided by the jury. In this connection see Biggers v. Continental Bus System, supra (303 S.W.2d 359), wherein it was stated in part (on p. 367) as follows:

"We recognize that a detailed analysis of opinion testimony of time and distance in reconstructing an automobile collision and the events immediately preceding it may not reflect the true situation but it is a means of reconstruction which cannot be denied to a jury, and if that method of reconstruction will support the verdict of the jury our duty leaves us no alternative but to adopt it."

■ We hold that there was evidence of probative force to support the jury's findings of negligence on the part of the driver of defendant's truck in the respects complained of by appellant in its points 1, 3 and 5.

We further hold that the evidence was sufficient to support said findings of negligence on the part of appellant's driver above referred to. Also after carefully considering and reviewing the entire record in this case in the light of the rules announced in the case of In Re: King's

**324**

Estate, 150 Tex. 662, 244 S.W.2d 660, it is our further holding that the jury's findings of negligence on the part of appellant's driver in the respects complained of by appellant's points 2, 4 and 6 were not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Appellant's points 1 through 6 are overruled.

Appellant by its point 7 contends to effect that the trial court erred in rendering judgment for plaintiffs because Neal's failure to make proper application of his brakes was a proximate cause of the accident as a matter of law. Proximate cause "embraces at least two distinct concepts, both of which must be present: (1) there must be a cause in fact,—a cause which produces an event and without which the events would not have occurred; and (2) foreseeability." Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560 (1961); Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957); Hopson v. Gulf Oil Corporation, 150 Tex. 1, 237 S.W.2d 352 (1951).

■ Ordinarily, the issue of proximate cause is a question of fact for the determination of the jury. 40 Tex.Jur.2d, Negligence, Sec. 165, p. 708. And for a decision contrary to the trial court findings on proximate cause, the Supreme Court would be required to find that reasonable minds could not differ as to the conclusions to be reached from the evidence. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114 (1951).

In Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946) it was stated, "Contributory negligence barring a recovery as a matter of law is a conclusion sometimes compelled by the evidence, but such cases are relatively rare. Ordinarily this question is for the trier of facts and only becomes a matter of law for the court when but one reasonable conclusion can be drawn from all the testimony."

Viewing the evidence on proximate cause most favorable to the verdict, we think the testimony of Mr. Ogletree, the professional engineer and accident reconstruction expert, shows that as Paul Neal approached the area of the East Texas trailer, that said trailer was across both northbound lanes of traffic. There was also evidence of probative force from which it could reasonably be inferred that appellant's truck had obviously changed its course of travel and that the change of mind of the driver of appellant's truck as to whether he would turn left or right before going to get coffee at the Poor Farm Truck Stop, was confirmed by the statement he made to Officer Kirkpatrick. In this connection we quote from the testimony of Officer Kirkpatrick in part as follows:

"Q. Mr. Kirkpatrick, in the course of your investigation did you have occasion to talk to the driver of the East Texas Motor Freight Company truck, Mr. Donald Ray Ball?

A. Yes, sir, I did.

Q. I will ask you whether or not he told you anything with reference to what he intended to do as he approached the entrance to the Poor Farm truck stop cafe?

A. Yes, sir, I did talk to him.

Q. And what did he say with reference to what he intended to do in that vicinity?

A. As I remember, he told me that he had intended to make a left turn, and * * *

Q. What did he say about his turn signals?

A. He had—I believe he told me that he did have his left turn signals on.

Q. Then what did he tell you happened, sir?

A. Best I remember it, he said that he saw the lights of an approaching vehicle from his rear, and then

changed from a left turn signal to a right turn signal.

Q. And thereafter, the impact occurred?

A. I believe so, shortly thereafter."

■ We think that the jury from the evidence adduced could have reasonably concluded that as Neal approached the tractor-trailer rig of appellant as said rig proceeded to make a left turn into the Poor Farm Truck Stop and that it was a reasonable conclusion from the evidence adduced that from Neal's point of view that if appellant's rig continued its course of travel to the left, the highway at the point of collision would have been clear in the northbound lane of traffic by the time Neal reached it, but that however appellant's driver changed his mind and turned his rig to the right, thereby stopping the progress of his trailer and leaving it across the two northbound lanes of travel. And at this point, from the evidence adduced, the jury could reasonably conclude that Neal did not have time to avoid the collision even if he had applied his brakes, and thus the failure to apply brakes would not have been a proximate cause of the collision.

Viewing the facts in the most favorable light in support of the jury's findings on the proximate cause issue complained of by appellant's point 7, we can not say as a matter of law that the jury's finding was wrong under the record in this case. Appellant's point 7 is overruled.

■ Appellant by its point 8 contends to the effect that the trial court erred in sustaining plaintiff's objection to the question of defendant's counsel on cross-examination of the witness Kirkpatrick, a Highway Patrolman, as to his opinion of the position of the vehicles involved at the time of impact and at other relevant times, and contending that Kirkpatrick had been qualified as an expert to so testify. Appellees by counterpoints in response to appellant's point 8 contend to the effect that the trial court correctly excluded the said opinion of

Kirkpatrick because appellant did not show that Kirkpatrick had technical and scientific knowledge sufficient to qualify him to express an opinion about the position or angles of the vehicle at the time of the impact; that the trial court did not abuse its judicial discretion in determining that Kirkpatrick was not qualified to testify to the opinions above referred to; and that furthermore the alleged error, if any, in excluding the opinion testimony in question, was harmless under Rule 434, Texas Rules of Civil Procedure.

Highway Patrolman Kirkpatrick was called as a witness by plaintiffs. He was not an eyewitness to the accident. He testified on direct examination that he investigated the accident, to certain statements made by Ball, the driver of appellant's vehicle, that appellant's tractor and trailer had been moved, and testified as to the location of the Neal truck. Plaintiffs on direct examination did not request him to express any opinion with reference to any facet of the case. On cross-examination by appellant, Patrolman Kirkpatrick testified without objection, that he " * * * determined that the gasoline truck struck the trailer, the left rear portion of the trailer, with the right front portion of the gasoline truck." In connection with appellant's point 8 we quote from the record in part as follows:

"Q. All right, sir, have a seat there. Were you, from your investigation, able to ascertain the position of the East Texas Motor Freight tractor and trailer on the highway at the time of impact?

A. The position of the East Texas Motor Freight?

Q. Right, whether it was traveling— you said, I believe, that the impact, in your opinion, the impact occurred in the outside lane. Was it traveling straight down the highway, or angling to its left or to its right?

A. In my opinion * * *

MR. HUTCHINSON: Court please, now we're going to object to his testifying as to his opinion. He can testify to the facts as he found.

THE COURT: Yes, I sustain the objection.

Q. May it please the court, this witness * * *

THE COURT: I sustain the objection.

Q. Note our exception. Did you find any evidence there at the scene? * * *

MR. NEWBERRY: Your Honor, we feel like this witness is just as qualified as the other witness.

THE COURT: I have sustained the objection, Mr. Newberry.

Q. Did you ever find any evidence at the scene that indicated to you that the East Texas Motor Freight truck crossed the line between the—from outside lane to the inside lane, at any time before this impact?

A. No, sir."

The only evidence sought by appellant to qualify Patrolman Kirkpatrick was that he was trained to investigate accidents at the Texas Department of Public Safety Academy, that he investigated 10 to 12 accidents per month and was trained to gather evidence to determine causes of accidents. There was no qualifying testimony elicited from Kirkpatrick to establish that he was trained in any technical or scientific field requiring knowledge and experience in calculus, trigonometry, metallurgy, algebra, geometry, chemistry, quantitative and qualitative analysis, etc., and there was no testimony that he was licensed as a professional engineer or that he had any character of engineering training or knowledge.

It is the function of the trial court, in the exercise of its judicial discretion to determine the qualifications of an expert witness to state an opinion, and under the record in this case, we hold that the trial court did not err, nor did it abuse its discretion, in sustaining plaintiff's objections to the question above referred to. In this connection see the following authorities: City of Austin v. Hoffman, Tex.Civ.App., 379 S.W.2d 103, no writ (1964); Koonce v. Perales, Tex.Civ.App., 268 S.W.2d 683, no writ (1954); Union Bus Lines v. Moulder, Tex. Civ.App., 180 S.W.2d 509, no writ (1944); Missouri P. R. R. Co. v. Rose, Tex.Civ.App., 380 S.W.2d 41, writ ref., n. r. e. (1964); Jenkins v. Hennigan, Tex.Civ.App., 298 S.W.2d 905, writ ref., n. r. e. (1957); Terbay v. Pat Canion Excavating Co., Tex.Civ. App., 396 S.W.2d 482, wr. ref., n. r. e. (1965).

It is our further view that the matter complained of by appellant in its point 8, if error at all, which we think it was not, was harmless, under the entire record in this cause. Rule 434, Tex.R.Civ.P.

Appellant's point 8 is overruled.

The judgment of the trial court is affirmed.