**Dorothy LOVELL et al., Appellants,**

v.

**Frank Clifford DeHONEY et al., Appellees.**

**No. 20445.**

Court of Civil Appeals of Texas, Dallas.

March 31, 1981.

Rehearing Denied May 6, 1981.

Michael Thompson, Thompson & Smyre, Denison, for appellants.

Donald H. Flanary, Jr., Henderson, Bryant, Wolfe, Vogelsang & Graber, Sherman, for appellees.

Before CARVER, STOREY and STEPHENS, JJ.

CARVER, Justice.

This case grew out of a collision at an intersection controlled by signal lights. The parties included Mrs. Lovell (one of the drivers), her husband, and her employer on one side and Mr. DeHoney (the other driver), his employer, and his compensation carrier on the opposite side. Following a jury trial and verdict, judgment was entered that the Lovell side take nothing. The Lovell side appeals urging that the cause be reversed and remanded because the opinion of an accident reconstruction expert, offered by the DeHoney side, was improperly admitted and caused an improper verdict

and judgment. We affirm because we hold that the trial court had discretion to admit the opinions of the expert witness (1) as to the danger to motorists because of the signal timing sequence and (2) as to the speed of the vehicles just prior to the collision.

It is not disputed in the record that the collision occurred within the intersection of Highway 75 and Munson Street in the city limits of Denison, Texas, nor that such intersection was controlled by light signals operated by the city at the time of the collision, nor that the light signals were in operating condition at the time of the collision. The disputed issues were what color signal was facing each driver at various times during each driver's approach to and entry into the intersection and what was the respective driver's speed as each approached and entered the intersection.

During his qualification examination, Varnus Walker, the challenged expert witness, testified that he was a Registered Professional Engineer licensed by the State of Texas with experience in accident reconstruction since 1973. Walker described the general method he employed in accident reconstruction as, "the accumulation of evidence and all information surrounding the accident; the conditions of the weather, the roads, the traffic, the time of day and all other types of information that can be accumulated, to use in painting the picture over and describing what happened and what caused the accident, and to estimate speeds, trajectories and energy dissipation in the accident." In this particular instance, Walker described his investigation to include:

On my visit I surveyed and examined the accident site, took measurements to be able to reproduce the dimensions and the conditions of the accident site.

I studied traffic and the traffic control at the accident site. Studied the movement of traffic and the responses of the vehicles and generally the flow of traffic. I examined the automobile that was involved in the accident, in which we found the automobile in partial disassembly. We reassembled the automobile to the extent that measurements could be made, and also could be measured and estimates of energy dissipation in the damage to the automobile could be made. I examined the truck that was involved in the accident, which had been repaired, and I examined the trailer that was involved in the accident, which did not suffer any damage. I then studied the police reports and statements of witnesses to the extent that I could chart the flow of information to the point where I could detect the consistency of certain information and inconsistencies.

. . . .

In this method I can reconstruct the best picture of the accident and estimate the speeds and the trajectories or the path of the vehicles prior to and after the collision.

The Lovell side's complaint about Walker's testimony is based upon two objections offered during his testimony. When Walker was asked if the signal light timing he observed during his investigation was relied upon by him as being the same timing that was in effect on the day of the accident and Walker responded that he had phoned the city department responsible for signal lights and it had reported that there was no change, the Lovell side objected on the ground that Walker's investigation was "totally based on hearsay." When Walker was asked if he had an opinion as to the speed of the respective vehicles at the time of the collision, he responded that he had formed an opinion based upon (1) the angle of contact between the vehicles, (2) the direction of distortion of each vehicle's frame and body, (3) the area or terrain on which the vehicles were moving, (4) the weight, type and design of each vehicle, (5) the weather, (6) photographs of the vehicle involved, (7) the ability of each to maneuver and the physical evidence of the maneuver, (8) the laws of physics, and (9) the statements of the drivers and witnesses to the accident. The Lovell side objected on the ground that the opinion lacked a "proper predicate" in that he did not sufficiently detail everything he had considered in reaching his opinion.

■ The Lovell side first argues that the opinion of the expert in relation to the signals should have been rejected because he relied *solely* upon the telephone call to the city to form or support the opinion expressed to the jury. We cannot agree. The opinion expressed to the jury began with the expert's own observation at the time of his investigation and the danger for motorists at the intersection was stated to lie in the relatively brief interval between color signals when coupled with human reaction time, the mass (weight times speed) of each vehicle, and the driver's ability to overcome the inertia of motion inherent in each moving vehicle when a change in the light occurred. It is true that the expert's calculations were expressed in reliance upon the city's telephone statement that the timing of the lights was unchanged since the accident, but the expert's opinion was *valid*, regardless of the actual timing of the signals on the day of the accident, because any timing of the signals would, on the same scientific principles, merely produce a calculation of danger to a greater or lesser degree. The expert's opinion that the intersection was dangerous was echoed in the record by Mrs. Lovell and the expert's reliance on the telephone report of unchanged timing of the lights was echoed by the witness Cain who estimated the yellow light timing as "no more than a couple of seconds." The expert's qualifications were not challenged, nor was there a challenge to the scientific principles he employed in reaching his opinion of damages. The degree of danger opinion the expert expressed did rely on the hearsay report from the city; however, the degree of danger opinion would have been calculated as being substantially the same, using the timing of the lights as given by the witness Cain. We conclude that the expert's opinion as to the danger to motorists at the intersection was not based *solely* on hearsay. In *Moore v. Grantham*, 599 S.W.2d 287 (Tex. 1980) our supreme court reviewed the prior decisions of the appellate courts of this state and affirmed its prior holding in *Slaughter v. Abilene State School*, 561 S.W.2d 789 (Tex. 1977) wherein the court stated:

In permitting the doctor's testimony into evidence, we declared our understanding of the state of the law in relation to expert opinion testimony: "Texas courts have followed the general rule that *where it appears a witness' testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible.*" 561 S.W.2d at 791. [Emphasis added.]

Additionally, the testimony went only to the conclusion that the intersection was dangerous. In this respect it was merely cumulative of other testimony to the same effect and, therefore, was harmless. We hold that the trial court did not err in admitting the expert's opinion based partially upon the hearsay statement that the signal light's timing remained unchanged between the accident and the expert's personal observation.

■ The Lovell side also argues that the expert's opinion as to vehicle speed at the time of collision should have been excluded because the expert failed to show a "proper predicate" for his opinion. The Lovell argument simply is that there is no authority in Texas approving an opinion of speed based solely on damage to the vehicles involved in a collision. In support of this argument, the Lovell side cites a number of cases involving witnesses whose knowledge on the subject was described as no better than the knowledge of the ordinary juror on the same subject or involving witnesses who sought to express opinions on subjects capable of scientific or technical analysis yet failed to show the application of any scientific or technical method in arriving at their opinion. Thus, in *Union Bus Lines v. Moulder*, 180 S.W.2d 509 (Tex.Civ.App.— San Antonio 1944, no writ) a highway patrolman was not permitted to estimate speed from the force of impact alone because he showed no more experience or mastery of a scientific method necessary for doing so, than the ordinary juror. In *Fisher v. Leach*, 221 S.W.2d 384 (Tex.Civ.App.— San Antonio 1949, writ ref'd n. r. e.) a taxi driver was not permitted to estimate the speed of a motorcycle which, unseen, struck

his cab because he was relying for his opinion "entirely upon the impact and damage to the vehicles involved." In *Flores v. Barlow*, 354 S.W.2d 173 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.) a highway patrolman was not permitted to estimate speed of colliding vehicles after the accident "solely from their damaged condition." In *Terbay v. Pat Canion Excavating Co.*, 396 S.W.2d 482 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.) a police officer was not permitted to estimate speed from skid marks and vehicle damage. In *East Texas Motor Freight Lines, Inc. v. Neal*, 443 S.W.2d 318 (Tex.Civ.App.—Texarkana 1969, writ ref'd n. r. e.) a highway patrolman was not permitted to state his opinion as to lane position of vehicles at the time of collision.

We do not disagree with these cases, but believe they are inapplicable to this case. In the last cited case, *Neal, supra*, the court distinguishes between experts—some of whom offer opinions within their demonstrated qualifications and others who offer opinions beyond their demonstrated qualifications. The *Neal* court stated:

The only evidence sought by appellant to qualify Patrolman Kirkpatrick was that he was trained to investigate accidents at the Texas Department of Public Safety Academy, that he investigated 10 to 12 accidents per month and was trained to gather evidence to determine causes of accidents. There was no qualifying testimony elicited from Kirkpatrick to establish that he was trained in any technical or scientific field requiring knowledge and experience in calculus, trigonometry, metallurgy, algebra, geometry, chemistry, quantitative and qualitative analysis, etc., and there was no testimony that he was licensed as a professional engineer or that he had any character of engineering training or knowledge.

It is the function of the trial court, in the exercise of its judicial discretion to determine the qualifications of an expert witness to state an opinion, and under the record in this case, we hold that the trial court did not err, nor did it abuse its discretion, in sustaining plaintiff's objections to the question above referred to. In this connection see the following authorities: *City of Austin v. Hoffman*, Tex.Civ.App., 379 S.W.2d 103, no writ (1964); *Koonce v. Perales*, Tex.Civ.App., 268 S.W.2d 683, no writ (1954); *Union Bus Lines v. Moulder*, Tex.Civ.App., 180 S.W.2d 509, no writ (1944); *Missouri P. R. R. Co. v. Rose*, Tex.Civ.App., 380 S.W.2d 41, writ ref., n. r. e. (1964); *Jenkins v. Hennigan*, Tex.Civ.App., 298 S.W.2d 905, writ ref., n. r. e. (1957); *Terbay v. Pat Canion Excavating Co.*, Tex.Civ.App., 396 S.W.2d 482, wr. ref., n. r. e. (1965).

Contrary to the situation of the expert in *Neal*, in our case Walker was a registered professional engineer by academic training and by granted degree as well as licensed by the state. He stated to the court and jury the technical and professional means he employed in arriving at his opinion together with the data he gathered from personal observation, the statements of parties and witnesses, and the lack of change in the signals reported by the city. The trial court exercised its judicial discretion to determine the witness' expert qualification to state his opinion to the jury and the jury exercised its prerogative to believe or disbelieve both the qualifications, the method employed, the reliability of the data used, as well as the merit of the conclusion the expert drew therefrom. We conclude that the trial court did not err in admitting Walker's testimony under this record as to the speed of the respective vehicles at the moment of collision.

Affirmed.