Doris R. YOUNG, Appellant,

v.

MEMBERS LIFE INSURANCE COMPANY, Appellee.

No. 7115.

Court of Appeals of Texas, El Paso.

Nov. 25, 1981.

Paul N. Kenworthy, Odessa, for appellant.

Shafer, Gilliland, Davis, McCollum & Ashley, Inc., Gary C. Riley and Jim Moseley, Odessa, for appellee.

Before STEPHEN F. PRESLAR, C. J., and OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This is an appeal from a take-nothing judgment in a suit brought by the Appellant, Doris R. Young, to collect the benefits of an insurance policy on the life of her deceased husband, Edwin Young. The judgment is based upon jury findings that the application for insurance contained false representations concerning the health of the insured. We affirm.

Mr. and Mrs. Young were married in February, 1977. On May 26, 1977, he was hospitalized for a period of nine days, and treated for "urinary symptoms." Mrs. Young was a registered nurse employed at Medical Center Hospital in Odessa, and she was the "floor nurse" on the night shift while her husband was hospitalized. She testified she kept up with his medical progress. The hospital records for that occasion show a past medical history which reflects Edwin Young "has had numerous admissions to mental institutions" and "admissions to military hospitals, at least a total of seven times, on account of 'nervous breakdowns.'" His condition on discharge was "improved" and the doctor's final impression reflected: (1) history of mental disease, currently stable, (2) mild hyperglycemia, suggestive of latent or subclinical diabetes, and (3) mild exogenous obesity.

On June 14, 1977, ten days after his release from the hospital, the application was completed for an insurance policy with Members Life Insurance Company. It contained an inquiry in question number 9 as to whether the insured ever had or been treated for, among other things, diabetes or nervous disorder. In each instance, the answer given was "no." The application also asked if "you know of any other impairment now existing in the health or physical condition of you, your spouse, or any of your children?" Again, the answer was "no." The next question inquired "have you, your spouse, or any of your children been examined or treated by a doctor during the past three years for anything other than the diseases listed under question number 9." The answer was "yes" and the explanation given was that Mr. Young took medication for a kidney infection from 6/1 through 6/5. The policy was issued.

On March 3, 1979, Mr. Young took a nap after lunch, and shortly thereafter he died of mass aspiration of food into his bronchial tubes. The company rejected the claim on the policy and this suit resulted.

The jury found that Mrs. Young, who actually completed the policy application, "represented that she knew of no other impairment then existing in the health of Edwin D. Young," and also found that she "represented that Edwin D. Young was treated only for a kidney infection in the three years prior to the completion of the application." The jury further found that each of the representations were "false," that Mrs. Young knew that they were false, that each was made to induce the company to issue a policy of insurance on the life of Edwin D. Young, and that the misrepresentations were relied upon by the company.

Point of Error No. 1 asserts the trial Court erred in overruling Appellant's Motion for Judgment Non Obstante Veredicto because there is no evidence legally or factually sufficient to support the submission of Special Issues 18 and 30, which inquired as to the issue of "reliance" by the insurance company upon the two misrepresentations. This point, which complains about the sufficiency of the evidence to submit an issue to the jury, raises only a "no evidence" point. *McDonald v. New York Central Mutual Fire Insurance Company*, 380 S.W.2d 545 (Tex.1964).

■ The only witness to testify on this issue was Dr. Robert T. E. Bishop, who is employed as a medical advisor by several different insurance companies in Dallas. He testified he was familiar with the rules and practices of Members Life Insurance Company in 1977, with regard to passing on applications for life insurance. But, he said he was not the underwriter who made the decision to accept the Youngs' application. He testified on direct examination that Members did rely on the information in the application in issuing its policy. On cross-examination, he said he had talked to the underwriter about the decision to accept the application. After a motion was made to strike his testimony because it was hearsay, he testified:

"Q Other than what you were told by the fellow who accepted this, do you have any independent knowledge of this particular transaction?

A No.

Q All right. Other than what was told to you?

A That's correct."

The motion to strike was never ruled on. But, if his testimony was hearsay, it may not be considered for any purpose even though it was admitted without objection. *Texas Co. v. Lee*, 138 Tex. 167, 157 S.W.2d 628 (1941). In such a case, the "no evidence" point should be sustained. *Perkins v. Springstun*, 557 S.W.2d 343 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.).

■ The basic rule, as set forth by the Texas Supreme Court in *Moore v. Grant-*

*ham*, 599 S.W.2d 287 (Tex.1980), is that an expert witness' opinion may not be based solely on the statements or reports of third persons, unless those statements are properly in evidence and the opinion is sought through hypothetical questions. But where the witness' testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible. In this case, Dr. Bishop did review the application before testifying and the application was an exhibit in evidence before the Court. Likewise, the deceased's medical records and the autopsy report about which the doctor testified were in evidence. Dr. Bishop had personal knowledge of the company policies and procedures for passing on an application. But, insofar as his opinion was based upon something the underwriter told him, it was based in part upon hearsay. We believe that a review of all of the doctor's testimony indicates that his opinion was based upon his medical experience and background, the company policies and procedures of which he had personal knowledge, the application and policy, both of which were in evidence, and also upon his conversations with the underwriter who reviewed the application. Thus, we conclude that the opinion was admissible. *Moore v. Grantham, supra; Slaughter v. Abilene State School*, 561 S.W.2d 789 (Tex.1977); *Swetlick v. Davis Oil Company*, 616 S.W.2d 660 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Lovell v. DeHoney*, 615 S.W.2d 276 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Point of Error No. 1 is overruled.

The other point of error asserts the trial Court erred in overruling Appellant's Motion for Judgment Non Obstante Veredicto because the special issue submitted did not submit the element of intent to deceive. It is argued that the false statements must have been made willfully, as well as with a design to deceive or defraud. Certainly there are those cases which have stated that in order to avoid liability on a policy, the false statements must be shown to have been made willfully and with a design to deceive or defraud. *See: Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820 (1947).

**824**

But, in *Allen v. American National Insurance Company*, 380 S.W.2d 604 (Tex. 1964), the Court noted the holding in *Texas Industrial Trust v. Lusk*, 312 S.W.2d 324 (Tex.Civ.App.—San Antonio 1958, writ ref'd), to the effect that the utterance of a known false statement, made with intent to induce action, is equivalent to an intent to deceive. That conclusion was again recognized in *Wolfing v. Prudential Insurance Company of America*, 417 S.W.2d 498 (Tex. Civ.App.—Waco 1967, no writ). We find nothing in *Mayes v. Massachusetts Mutual Life Insurance Company*, 608 S.W.2d 612 (Tex.1980), to suggest that a false statement made with intent to induce action is not equivalent to an intent to deceive. In fact, Justice Barrow noted in the *Mayes* opinion that the trial Court followed those authorities which hold that an insurer cannot avoid liability unless there is a finding that the insured intended to procure issuance of the policy by representations known to be false. We conclude that the findings by the jury in this case that false representations were knowingly made to induce issuance of the policy, and that they were relied on and were material to the risk, were sufficient to avoid liability on the policy. Point of Error No. 2 is overruled.

The judgment of the trial Court is affirmed.