**Roger Lynn DAVIS et al., Appellants,**

v.

**Morgan Ray RABON et al., Appellees.**

**No. 16818.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 3, 1977.

Rehearing Denied March 3, 1977.

Kronzer, Abraham & Watkins, Robert E. Ballard, Michol O'Connor, Houston, for appellants.

Hugh Rice Kelly, Thomas R. Phillips, Houston, Baker & Botts, Houston, of counsel, for appellees.

COLEMAN, Chief Justice.

This is an appeal from a take nothing judgment entered in a suit to recover damages for bodily injuries growing out of a collision between a truck and a motorcycle. The judgment was entered on a jury verdict finding primary negligence and contributory negligence.

The plaintiff, Roger Lynn Davis, was riding his motorcycle in a westerly direction on Creekmont Road. The defendant, Morgan Ray Rabon, was driving a truck owned by the Houston Lighting & Power Company in an easterly direction on the same street.

The jury found that Rabon failed to give a continuous left turn signal during the last 100 feet before turning and that such failure was a proximate cause of the collision. The jury also found that Rabon began to turn left when the vehicle driven by Davis was approaching so closely as to constitute an immediate hazard and such failure to yield was a proximate cause of the collision. The jury then found that the plaintiff was driving at a greater rate of speed than a person using ordinary care would have driven and that this was a proximate cause of the collision.

The plaintiff has appealed contending that there is no evidence, or in the alternative insufficient evidence, to support the jury's finding on speed or on proximate cause. In reviewing the no evidence points we look only to the evidence having probative force which favors the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

A bridge was located about 100 yards from the place where the collision occurred. The plaintiff testified that as he approached the bridge he was traveling some 25 to 30 miles per hour and that he slowed down some as he crossed the bridge. The plaintiff testified that when the road was wet he sometimes slowed down to 15 to 20 miles per hour and that that was a safe speed under those conditions. There was testimony that the road was wet at the time of the collision. The paved portion of the road was about 18 feet in width. The road was paved with asphalt. Shallow ditches were on each side of the road. The motorcycle laid down 87 feet of skid marks. The collision occurred about two feet from the edge of the plaintiff's side of the road. The motorcycle hit the truck at a point between the rear wheel and the bumper. There was testimony that the motorcycle slid sideways the last 20 to 25 yards before hitting the truck.

There is some evidence having probative force from which the jury was entitled to conclude that the plaintiff was driving faster than an ordinarily prudent person would have driven under the same or similar circumstances. The jury would be entitled to conclude that 25 miles an hour is an exces-

sive speed for a motorcycle traveling on a comparatively narrow wet asphalt street. *Garza v. Anderson*, 417 S.W.2d 368 (Tex. Civ.App.—Corpus Christi 1967, no writ history); *Fitzgerald v. Russ Mitchell Constructors, Inc.*, 423 S.W.2d 189 (Tex.Civ.App.—Houston [14th] 1968, writ ref'd n. r. e.); *Villarreal v. Zouzalik*, 515 S.W.2d 742 (Tex. Civ.App.—San Antonio 1974, no writ history).

The jury might have determined from the evidence that had the motorcycle been traveling at a slightly slower rate of speed the truck would have had time to have crossed the street safely. The jury might also have believed that the speed prevented the plaintiff from taking evasive action to avoid the accident. *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359 (1957); *Alexander v. Appell Drilling Co.*, 290 S.W.2d 377 (Tex.Civ.App.—Waco 1956, writ ref'd n. r. e.).

■■■ A closer question is presented by the insufficient evidence assignment. We must consider all of the evidence and determine whether or not the verdict is manifestly unjust. With the exception of the defendant, all of the witnesses who testified remembered that the road was dry and the records of the investigating officer indicated that it was a clear day and a dry road at the time of the collision. The evidence was also strongly controverted on the question of whether the plaintiff lost control of his motorcycle prior to the collision.

The plaintiff's version of the events leading up to the collision cannot be reconciled with that recounted by the defendant driver. As the plaintiff approached the scene of the collision he crossed a bridge which was located between 100 and 140 yards from the scene of the collision. This bridge sloped both ways from the center. On the west side of the bridge there were some holes and mounds. Roger testified that he was well acquainted with this stretch of road and with the condition of the bridge. He knew that he could not go over it real fast on his motorcycle. He approached the bridge on this occasion at a speed of 25 or 30 miles per hour. As he crossed the bridge

he slowed down because of the drop-off and the holes in the road. He saw the Light Company pick-up when he approached the bridge. It was traveling slowly in his direction in the middle of the road. He was able to cross the bridge without hitting any of the holes and did not lose control of his motorcycle as he came off the bridge. He was driving in the middle of his side of the road at about 25 miles per hour. He did not speed up and continued to watch the truck. He saw no other vehicles on the road. Without giving any warning the truck turned to the left in front of him in the direction of a private driveway. He immediately hit his brakes. At that time the truck was about three car lengths from him. He did not have time to go around the truck, and he hit it right behind the back wheel. The plaintiff admitted that on a previous deposition he had testified that the accident happened in the middle of the street rather than in the middle of his side of the street as he testified at the trial. He also retracted his deposition testimony that he had found some skid marks out there in the middle of the road starting about three car lengths back of the point of collision and leading up to the point of collision. In his deposition he testified that the truck was blocking the entire street.

The plaintiff testified that it wouldn't have been safe to go across the bridge at 40 miles an hour because he would probably get air borne. He said he did not get air borne. He also testified that he did not lose control of his bike after he hit the bumps near the bridge.

Clyde Robinson, a witness called by the plaintiff, testified that he saw the collision from his position inside his house. The truck made a left turn into his driveway. At the time of the collision the truck was about half way off the blacktop portion of the street. He saw the motorcycle begin sliding right about at his mailbox and it continued some 75 feet to the point of collision. The truck was moving slowly and did not completely stop until it had cleared the road after the accident had occurred. He heard Mr. Rabon tell Roger's father that he

didn't see Roger. He testified that it would have been possible for Roger to go around the truck if he had not been skidding, but that it is impossible to straighten out a motorcycle once it begins skidding.

Michael Ray Reed, a sixteen year old boy, who was a friend of the plaintiff, lived near the scene of the collision. He testified that at the time of the collision he was in his back yard playing basket ball on a dirt court, and that the ground was dry. He saw the pick-up truck and the motorcycle meeting. He testified that the truck driver was looking at the meter in the yard and that he just turned in front of the motorcycle. He knew Roger and had talked to him that morning. He saw the actual collision and it occurred on the paved portion of the road.

Officer Bobby Cartwell testified that he investigated the accident. He received the report about 10:20 and arrived on the scene at 10:40. He was informed that the accident happened about 10:00 o'clock. He located the point of collision as being near the edge of the blacktop on the motorcycle driver's side of the road. There was some 87 feet of skid marks. He did not remember any rain that day, and the report which he made at the scene indicated that the road was straight and dry. He testified that he did not remember Mr. Rabon telling him that at the time of impact his truck was parked well up in the driveway and that it had been there at all times prior to the impact. He testified that he did not believe that he would have shown Mr. Rabon as an operator of the truck if it had been parked.

Morgan Ray Rabon, the driver of the truck, testified that he was employed by Houston Lighting & Power Company as a meter reader. He testified that it had rained about an hour before the accident. It was not raining at the time of the accident but there was moisture on the road. A few minutes before the accident he pulled into a driveway off of the road. He got out of the truck and read two meters. He returned to the truck, got in and was sitting behind the wheel at the time of the accident. The truck motor was running

and when he realized that the motorcycle would hit him he tried to drive the truck out of the way. He is not certain that the truck moved before the collision but it did move a few feet. While he was sitting in the truck he saw the motorcycle cross the bridge. It appeared to him that the motorcycle driver was trying to make the motorcycle jump as it came off the bridge. When the motorcycle settled down on the road it appeared that the driver was trying to get it under control. The driver kept the motorcycle going in a fairly straight line up until the time of the collision. It appeared that when the motorcycle driver got about 10 to 12 feet from the truck he started sliding sideways. He helped measure the skid marks and found them to be 87 feet in length. He testified that the collision occurred off of the roadway. On cross-examination he again testified that when Davis left the bridge he jumped and had trouble keeping the motorcycle under control when he landed. He testified that Davis was fighting the motorcycle. The motorcycle skidded. It looked like he was getting it under control. Davis continued in a straight line veering toward the truck. Rabon has ridden motorcycles all of his life off and on. He stated that any time you lock your brakes anything can happen. Finally he testified that Roger Lynn Davis never got the bike under control and that he was out of control the entire distance between the bridge and the point of collision.

Max Loukanis was called as a witness by the defendant. He testified that on the day of the accident in question he was sitting at his desk in a building located on the street where the accident happened. He heard the accident but did not witness it. Just prior to the accident he heard a squeal which he recognized as the sound usually made by motorcycles as they come over the bridge. When a motorcycle "hit the air" coming off of the bridge the rear wheel would usually spin when it hit the ground. The spinning wheel created the sound which he recognized. The sound caused him to look up and he got a glimpse of the motorcycle through a small door. The rider appeared to be in control of the motorcycle.

He immediately went to the scene of the accident, but he cannot remember whether or not the street was wet or whether it rained that morning. He leaves the big door to his place of business closed when it is raining or when there is a strong wind blowing. The door was closed that morning.

Alfred Davis, the father of Roger Lynn Davis, testified that the street was dry when he reached the scene of the accident. The front wheel of the motorcycle was badly bent as was the rear bumper on the pick-up truck. Roger Lynn Davis suffered two broken legs as a result of the collision.

■ Rabon testified that while he couldn't judge just how fast the motorcycle was going it "looked like to me he was going too fast." In the absence of corroborating facts and circumstances such testimony would not be sufficient to raise an issue of negligent speed. *Anderson v. Broome*, 233 S.W.2d 901 (Tex.Civ.App.—El Paso 1950, no writ history); *Williams v. Hemphill County*, 254 S.W.2d 839 (Tex.Civ. App.—Amarillo 1952, no writ history).

There are certain circumstances in evidence to support this conclusion of excessive speed. Rabon testified that the motorcycle appeared to be out of control after it crossed over the bridge. Davis failed to take evasive action. *Garza v. Anderson*, 417 S.W.2d 368 (Tex.Civ.App.—Corpus Christi 1967, no writ history). There is the evidence that the vehicle skidded some 87 feet prior to the collision. There is also the testimony concerning the damage to the vehicles and to Roger Lynn Davis.

On the other hand, there is no testimony as to the actual rate of speed the motorcycle was traveling prior to the collision except that of Davis. Nothing in the evidence indicates that the speed of the motorcycle would have been considered excessive were it not for the fact that the pick-up truck turned across the street in the middle of a block to enter a private driveway. The only testimony as to distances at the time this maneuver became known to Davis was his testimony that he was three car lengths away, and the skid mark testimony.

The jury did not accept Rabon's testimony concerning the events leading up to the collision. Since the testimony as to the wet streets came from Rabon and was contradicted by other witnesses, as was his version of the events leading up to the collision, we think the great weight and preponderance of the evidence leads to the conclusion that the street was dry. Rabon's testimony that the motorcycle was out of control was speculative rather than positive. At one time he stated, "I can't say for sure whether he had control," and at another he stated, "I can't remember whether he looked like he had it under control or not." He also testified that the motorcycle maintained a straight course until it started sliding sideways about ten or twelve feet from the point of impact. The evidence does not support a finding that the speed at which the motorcycle was driven across the bridge resulted in loss of control.

Rabon testified that he watched Davis approach on the motorcycle for more than 100 yards, and that he got the impression that the motorcycle was traveling too fast and was not under proper control. Despite the fact that his attention was focused on the motorcycle for this length of time he was unable to testify positively to loss of control or to even estimate the speed of the vehicle. The fact of a relatively long skid mark might be probative evidence of excessive speed in the case of an automobile. Jurors might be expected to have sufficient experience in applying the brakes of automobiles to evaluate such evidence. However, it cannot be expected that the average individual would have enough experience in handling motorcycles to determine the speed of a motorcycle from the length of the skid marks. The testimony concerning the loss of control must be evaluated in light of the further testimony of Robinson and Rabon, both experienced motorcycle drivers, to the effect that once the brake on a motorcycle is applied with such force as to cause the back wheel to skid the machine is out of control. The physical damage to the vehicles as shown in the evidence in this case is not reliable evidence of excessive

speed. The facts and circumstances developed in the evidence lack sufficient probative force to support the jury's finding of excessive speed.

The judgment will be reversed and the cause remanded.